[Crim. No. 4703.   Second Dist., Div. One.   Mar. 24, 1952.]

THE PEOPLE, Respondent, v. JOSEPH FREDERICK, Appellant.

William C. Ring and Wells & Stankey for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

DORAN, J.—Appellant was charged with violation of Vehicle Code, section 501, by wilfully, unlawfully and feloniously driving an automobile "while under the influence of intoxicating liquor, and in an unlawful manner, causing bodily injury to Robert Russell Buzzell, Lorraine Buzzell and Frances Carter Gland, human beings."

About 2:30 or 3 a.m. on November 26, 1950, at the intersection of Florence Avenue and Alameda Street, a collision occurred between a 1936 Ford sedan driven by defendant south on Alameda, and a 1941 Ford sedan driven by Robert Russell Buzzell east on Florence. Frances Carter Gland was a passenger in defendant's car and Buzzell's wife, Lorraine, was riding in the Buzzell automobile. Both drivers and passengers sustained injuries and were transported by ambulance to the Tweedy Industrial Hospital in South Gate, 3 miles away. None of the injuries were fatal and apparently none resulted in permanent disability.

There is some conflict in the evidence. From the testimony of John de Paulis who was then driving south on Alameda Street, it appears that defendant's car passed witness' car "awfully fast," later estimated at 50 miles per hour, swerved out onto the wrong side of the street, and collided with the Buzzell car which was almost through the intersection. There were boulevard stop signs and red flasher signals at the intersection. It is admitted in appellant's brief that defendant "violated the law in not completely stopping before entering the intersection," but claimed that neither that violation nor the fact that defendant was "driving slightly on the wrong side of the street," was a proximate cause of the injuries. Appellant maintains that "he proceeded across the intersection at less than 30 m.p.h. and had cleared all but 15 feet when Buzzell suddenly darted in front of

him and was struck by defendant's car''; that ''In this sudden peril he turned to his left or southeast across the center line and probably speeded up in hopes of averting the collision.''

The evidence is also in conflict as to the circumstances surrounding the taking of a sample of appellant's blood at the Tweedy Industrial Hospital. The testimony of Dr. Victor Makita, who operates the hospital, was that when defendant was brought in, ''He was complaining of pain in the left elbow, pain in the chest, principally; and his breath was markedly alcoholic. . . . His temperature and respiration were normal, and he had a pulse rate of 80 and blood pressure of 120 over 75; and he was conscious and apparently not in shock.'' There was other testimony to the effect that appellant's breath was alcoholic. Appellant, who had been conveying two other men on a drinking tour, denied having had anything to drink except two beers earlier in the evening.

According to Dr. Makita's testimony, after treating appellant's injuries, appellant was asked ''whether it was all right to draw blood for blood alcohol tests for the California Highway Patrol,'' and ''He said it was all right. Put his arm out.'' Dr. Makita then ''put a tourniquet around his arm and cleansed the area with benzine, and Dr. Kern (who was there attending the Buzzells) extracted the blood with a syringe.'' The sample so obtained was delivered to the California Highway Patrol and a chemical examination disclosed that appellant's blood contained .21 of 1 per cent of alcohol by weight.

Appellant's version is that the blood extraction occurred while appellant was unconscious and without consent being given therefor. The appellant claims to have been unconscious from the time of the accident until waking up in the General Hospital between 9 and 10 o'clock the next morning, and denied any recollection of being at the Tweedy Industrial Hospital. Records of the General Hospital show a notation at 7 a.m.: ''Admitted to Ward 5600 per stretcher. Conscious but rather drowsy.''

Defendant, before trial, ''moved the trial court to suppress evidence of the blood specimens coercively extracted from his body without his consent and the alcoholic tests of said samples.'' The grounds of this motion were that ''defendant's rights to personal security and privacy were violated by said doctors, plaintiff and its agents in violation of the Fourth Amendment . . . and that the use of said blood and any

chemical analysis thereof in evidence . . . will violate defendant's rights to due process of law and against self-incrimination and to not be a witness against himself and to not be compelled to furnish evidence against himself as guaranteed by the Fourteenth Amendment, Constitution of the United States, and Article I, sec. 13, Constitution of the State of California." The motion was denied. The taking of this blood sample, its chemical analysis, and use in evidence resulting in conviction, form the basis of appellant's chief ground for reversal.

Cited and discussed in some detail by both parties to this appeal is the case of *People* v. *Rochin,* 101 Cal.App.2d 140 [225 P.2d 1, 913], which was a prosecution for unlawful possession of a preparation of morphine. Two capsules containing the preparation were found by officers who broke into defendant's bedroom without a warrant; later, the capsules which had been swallowed by defendant were forcibly recovered by means of a stomach pump. The appellate court, following the well established California rule, held that the capsules, although illegally obtained, were nevertheless admissible in evidence. A hearing in the Supreme Court of California was denied, three justices dissenting, in 36 A.C. 553 (Jan. 11, 1951).

In *Rochin* v. *California* (1952), 342 U.S. 165 [72 S.Ct. 205, 96 L.Ed. ——], the Supreme Court of the United States, on certiorari, unanimously held that the conviction, because obtained by the methods described above, should be reversed. A majority of the court based the decision on the ground that the conviction violated the due process clause of the Fourteenth Amendment in that the methods employed offended "a sense of justice." Black and Douglas, JJ. in separate concurring opinions, relied upon the prohibition of self-incrimination in the Fifth Amendment, deemed to impose restraints not only upon the federal government but also upon the states.

An important difference between the Rochin case and the present prosecution is at once apparent. In the Rochin case there appears to be no doubt that the morphine capsules were illegally obtained. Three deputy sheriffs broke into defendant's room, "jumped upon the defendant, grabbed him by the throat," in an unsuccessful effort to recover the capsules which defendant had swallowed; defendant was then handcuffed, taken to a hospital, strapped on an operating

table, and the capsules contained morphine were forcibly retrieved by the use of a stomach pump.

The record in the instant case, however, discloses no such aggravated situation, but merely presents a direct conflict on the question whether the blood sample was taken with or without the defendant's consent. Obviously, if consent was given, any apparent similarity between the two cases ceases to exist, and the recent United States Supreme Court decision in the Rochin case can afford no relief to the appellant herein. In view of this conflict of evidence, and the duty of a reviewing court to view the evidence in the light most favorable to the judgment rendered, it becomes unnecessary to further discuss the Rochin case or this ground of appeal.

The testimony of Dr. Makita who attended the appellant at the Tweedy Emergency Hospital, has already been referred to, and furnishes substantial evidence that consent was given, notwithstanding appellant's denial thereof. It was likewise Dr. Makita's testimony that appellant was then conscious, moving around and uncooperative; he wanted to smoke and wanted to drink, and this and that.''

In appellant's brief various matters have been pointed out as affecting the credibility of the above mentioned testimony, such as alleged inconsistent statements in regard to defendant's condition, and a pending civil action against the physician for wrongfully extracting the blood sample. Opportunities for fabrication, and alleged unreliability of the blood analysis, are likewise stressed. Suffice it to say that such items of evidence were for the consideration of the jury which heard the testimony rather than for consideration by a reviewing court. It is reasonable and proper to assume that the verdict of conviction was the result of a careful study of all the evidence presented.

That the record discloses substantial evidence in support of the judgment of conviction cannot be doubted. The admission that appellant had at least consumed some beer earlier in the evening; evidence that the purpose of defendant's drive was to convey certain other persons on a drinking tour; the surrounding circumstances of the accident, appellant's ''markedly alcoholic'' breath, and the final blood analysis showing .21 of 1 per cent of alcohol, undoubtedly provide substantial evidence to sustain the conviction. That there may have been other and conflicting evidence in appellant's favor does not furnish a ground for reversal.

A survey of the testimony given at the preliminary examination fails to support appellant's contention that the committing magistrate had no probable cause to hold defendant for trial. The transcript of 145 pages of testimony indicates that the matter was gone into in considerable detail; it included evidence similar to that hereinbefore discussed, from which the magistrate was justified in finding that there was reasonable and probable cause to believe the defendant guilty.

Other contentions raised in appellant's brief charge errors in restricting cross-examination and in the admission and exclusion of evidence concerning defendant's intoxication. These alleged errors relate to the physician's opinion that defendant was intoxicated, and to the blood tests previously mentioned. The record fails to sustain appellant's contentions and no prejudicial error has been made manifest.

The same may be said in reference to appellant's exception to the trial court's statement in the jury's presence: "You are not testing anybody's right to take that blood test in this action, Mr. Ring. That is a civil matter which will not be decided by the jury." As pointed out in respondent's brief, "appellant did not assign the remark of the court as error, or ask the Court to admonish the jury to disregard it." The remark was made not to the jury but to appellant's attorney in an attempt to keep the argument within the bounds of propriety. It was true that a civil action was pending to determine the matter in question. The record fails to disclose any resulting prejudice.

It is claimed by appellant that the trial court erred in refusing certain requested instructions to the jury, and in the giving of certain instructions. Several of these assignments relate to the extraction of the blood sample and the use in evidence of the blood analysis, matters which have hereinbefore been discussed. Others relate to the duty to drive on the right half of the road, and in reference to impeaching evidence concerning defendant's former conviction of a felony, alleged to have been secured by brutality and threats of the arresting officers. A review of the instructions given and refused discloses no prejudicial error; the instructions when viewed as an entirety cannot be deemed to have violated any of the defendant's fundamental rights nor to have left the jury with an erroneous view of its duties. Nor did the trial court err in overruling defendant's demurrer to

the information, in denying a motion in arrest of judgment and a motion for a new trial.

A review of the record herein shows that the appellant was accorded a fair and impartial trial, and that the judgment of conviction is supported by substantial evidence. Under the showing made and the substantial evidence of the appellant's consent, the trial court's refusal to suppress evidence of the blood test cannot be deemed reversible error.

The judgment and order denying a new trial are affirmed.

White, P. J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 21, 1952. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.