In the Matter of LOUIS E. SCHUTT, Petitioner, against JAMES F. MACDUFF, as Commissioner of Motor Vehicles, Respondent.

Supreme Court, Special Term, Orange County, January 2, 1954.

*J. Allan Ballman* for petitioner.

*Nathaniel L. Goldstein, Attorney-General* (*Wendell P. Brown, Ruth Kessler Toch* and *Philip J. Fitzgerald* of counsel), for respondent.

EAGER, J. This is an article 78 proceeding brought against the Commissioner of Motor Vehicles by one Louis E. Schutt to annul a determination of the commissioner revoking the motor vehicle driver's license of the petitioner. The license was revoked by the commissioner for the alleged refusal of the petitioner to submit to a blood test as demanded by a police officer following his arrest for driving while intoxicated. The commissioner, in

revoking the license, acted under the authority of the provisions of section 71-a of the Vehicle and Traffic Law (L. 1953, ch. 854), said section reading as follows: " § 71-a. *Chemical Tests* 1. Any person who operates a motor vehicle or motor cycle in this state shall be deemed to have given his consent to a chemical test of his breath, blood, urine, or saliva for the purpose of determining the alcoholic content of his blood provided that such test is administered at the direction of a police officer having reasonable grounds to suspect such person of driving in an intoxicated condition. If such person refuses to submit to such chemical test the test shall not be given but the commissioner shall revoke his license or permit to drive and any nonresident operating privilege. 2. Upon the request of the person who was tested, the results of such test shall be made available to him. 3. Only a duly licensed physician acting at the request of a police officer can withdraw blood for the purpose of determining the alcoholic content therein. This limitation shall not apply to the taking of a urine, saliva or breath specimen. 4. The person tested shall be permitted to have a physician of his own choosing administer a chemical test in addition to the one administered at the direction of the police officer."

It appears from the petition that, for upwards of thirty-eight years prior to August 17, 1953, the petitioner was duly licensed as a driver of motor vehicles in the State of New York. On August 10, 1953, he was arrested on the public street in the city of Middletown, N. Y., by a police officer without a warrant for the crime of operating a motor vehicle while in an intoxicated condition, in violation of subdivision 5 of section 70 of the Vehicle and Traffic Law. He was then forcibly taken by the officer to the city police headquarters, where, after being booked upon the above-mentioned charge, he was requested by the police officer to go to a hospital and submit to a " blood test " for the purpose of determining the alcoholic content of his blood. The petitioner alleges that he refused to submit to such test. On August 11, 1953, he was arraigned in the City Court and after entering a plea of not guilty, the proceeding was adjourned. Prior to the trial of the said criminal proceeding, and on or about August 20, 1953, the petitioner received a written order from the commissioner, dated August 17, 1953, revoking his driver's license pursuant to said section 71-a, for the following cause: " Refused, on 8/19/53, at Middletown, N. Y. to submit to a chemical test for the purpose of determining the alcoholic content of his blood."

The said order which directed the immediate surrender of petitioner's driver's license was immediately complied with, although petitioner advised the Commissioner of Motor Vehicles in writing that neither the validity of section 71-a nor the legal power of the commissioner to revoke the license was conceded, and the petitioner particularly objected to the revocation upon the ground that it deprived him of his license without a hearing and without due process of law.

On September 11, 1953, petitioner was duly tried by the City Court and a jury upon the charge of operating a motor vehicle while in an intoxicated condition, and the jury returned a verdict of " not guilty ". Thereupon, the petitioner was duly discharged by the court.

The instant proceeding was thereafter commenced on September 23, 1953, and the respondent did file with the court a written objection in point of law to the petition upon the ground that it did not state facts sufficient to entitle the petitioner to any relief. Motion was thereupon made by the respondent for an order dismissing the petition, and it is this motion that is now before the court. It is, in effect, the contention of the petitioner that his petition is to be sustained in that he has been deprived of his constitutional rights. In fact, he makes the broad claim that said section 71-a of the Vehicle and Traffic Law is unconstitutional and that, therefore, the action of the commissioner in revoking his license was illegal and void.

There has been a long-felt need for further legislation to clear the highways from the menace of the intoxicated driver. A mounting toll yearly in injured and dead has been his responsibility. The seriousness of the problem is well-known, yet it is matter of common knowledge that the law enforcing officers and courts have been unable to adequately deal with the problem. The necessary convictions have not been forthcoming to effectively deter the great numbers who do drive after taking a few drinks. The failure to convict in a particular case is generally due to the inability to prove beyond a reasonable doubt that the driver was intoxicated. Thus, any statute tending to assist in the marshalling of definite evidence as to state of intoxication of an accused is a step in the right direction.

Having in mind the urgent need for legislation looking toward the procurement of chemical tests for the purpose of definitely determining whether or not an accused driver was intoxicated to the extent of impairing his driving ability, this particular statute was enacted. It was the result of a great deal of study

and the attempt was made to frame it in the particular way it is written for the purpose of avoiding all possible constitutional objections. (See Jan. 1953 Interim Report of N. Y. Joint Legislative Committee on Motor Vehicle Problems, Legis. Doc. [1953], No. 25.) The statute is framed upon the premise that the operation of a motor vehicle upon the public highways is the exercise of a mere privilege, which may be denied, rather than a right. (See *People* v. *Rosenheimer*, 209 N. Y. 115, 120, 121, and *Matter of Heart* v. *Fletcher*, 184 Misc. 659.) While there is doubt as to whether the higher courts will today go along fully with the broad language of the early decisions in this State in this connection (see post, this opinion), it is clear that the right to use the highways is a qualified right, and is the proper subject of licensing. The Legislature has the undoubted power to reasonably regulate the use of the highways and may impose reasonable conditions to be complied with to entitle one to a license to drive upon the highways. (See further, *Reitz* v. *Mealey*, 314 U. S. 33; *Town of Waterford* v. *Brockett Lbr. Co.*, 227 App. Div. 422; *Matter of Ohlson* v. *Mealey*, 179 Misc. 13, and *People* v. *Cohen*, 128 Misc. 29.) Bearing this in mind, the statute is equivalent to an enactment by the Legislature that the operation of a motor vehicle on the highways of the State shall be deemed to constitute a consent by the operator that any license to operate it issued to him shall be deemed to have been issued subject to revocation in the event he shall refuse to submit himself to one or more of the tests therein provided for when demanded by a police officer having reasonable grounds to suspect him of driving while intoxicated.

The theory behind the statute is fundamentally sound, and the statute would unquestionably be sustained if there were inserted therein fair and reasonable safeguards required by the due process clauses. The various pertinent constitutional questions, including the question whether there is a denial of due process, have been briefed by counsel with exceptional thoroughness and ability, and it is fitting that the court shall set forth its conclusions in detail with respect to all such questions, and they follow:

1. *The statute and the constitutional provisions against self incrimination.*

It is clear that the statute does not infringe upon any constitutional guarantee against self incrimination. The provisions of the Fifth Amendment of the Federal Constitution in this

connection would not apply because such provisions are not applicable in State proceedings. (*Twining* v. *New Jersey*, 211 U. S. 78.) And the conclusion is inevitable that the statute does not offend against section 6 of article I of the State Constitution providing that no person shall '' be compelled in any criminal case to be a witness against himself ''. As stated by the Joint Legislative Committee (p. 26), under the statute '' the accused is given the choice of waiving his right against self incrimination — assuming such a right exists — or losing the privilege to continue driving on our highways.'' Bearing in mind the purpose of the statute and that highway safety is a matter of great concern to the public, it may not be held that it is unreasonable or beyond legislative power to put such a choice to a motorist who is accused upon reasonable grounds of driving while intoxicated. And it is clear that one may waive his constitutional privilege against self incrimination. (See *People* v. *Rosenheimer*, 209 N. Y. 115, 122, 123.) In fact, there is no question but that one may waive any constitutional right which is solely personal in nature. (See 16 C. J. S., Constitutional Law, §§ 89–91.) In point, it is expressly held in a great number of cases that where a defendant voluntarily furnishes a specimen of his body fluid for analysis, there is a waiver of the right to urge the privilege against self incrimination. (See *State of Arizona* v. *Duguid*, 50 Ariz. 276; *People* v. *Frederick*, 109 Cal. App. 2d 897; *Touchton* v. *State of Florida*, 154 Fla. 547; *Spitler* v. *State of Indiana*, 221 Ind. 107; *State of Iowa* v. *Haner*, 231 Iowa 348; *State of No. Carolina* v. *Cash*, 219 N. C. 818; *State of Iowa* v. *Small*, 233 Iowa 1280; *State of Iowa* v. *Werling*, 13 N. W. 2d 318 [Iowa]; *State of Iowa* v. *Morkrid*, 286 N. W. 412 [Iowa]; *City of Columbus* v. *Thompson*, 55 Oh. L. Abs. 302; *Columbus* v. *Van Meter*, 56 Oh. L. Abs. 400, and *Halloway* v. *State*, 146 Tex. Crim. Rep. 353.)

It also seems clear that the constitutional privilege would not bar the use in the prosecution of a defendant of the results of a body fluid test even though taken while he was so drunk as to be confused or unconscious or otherwise in such a condition that it may not be said that he voluntarily consented thereto. (See in point, *State of Oregon* v. *Cram*, 164 A. L. R. 952; *People* v. *Tucker*, 198 P. 2d 941 [Cal.]; *State of Idaho* v. *Ayres*, 211 P. 2d 142 [Idaho]; *State of New Hampshire* v. *Sturtevant*, 70 A. 2d 909 [N. H.]; *People* v. *Spears*, 201 Misc. 666, and *Bovey* v. *State of New York*, 197 Misc. 302.) This, because the decisions of this State have limited the effect of the State constitutional

provision against self incrimination to protect only as against testimony compulsion, that is, as to disclosures by utterance, oral or written. (*People* v. *Defore,* 242 N. Y. 13, 27; *People* v. *Strauss,* 174 Misc. 881; *People* v. *Van Wormer,* 175 N. Y. 188, 195; *People* v. *Gardner,* 144 N. Y. 119, 128.) As said by Mr. Justice HOLMES of the United States Supreme Court, '' the prohibition of compelling a man in a criminal court to be a witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material.'' (*Holt* v. *United States,* 218 U. S. 245, 252–253.)

Therefore, the claim that the statute tends to violate a driver's privilege against self incrimination is readily overruled.

## 2. *The statute and the constitutional provisions against unreasonable search and seizure.*

It is the claim of the petitioner that section 71-a encroaches upon the guarantee contained in section 12 of article I of the State Constitution, that, '' The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated ''. It is important to note, however, that the petition before the court fails to show any infringement of the petitioner's rights under this particular constitutional guarantee in that it expressly appears therein that the chemical test of his blood was demanded of him after his due arrest. It is clear that, as a general proposition, the guarantee protects only against searches made without a warrant and beyond the terms of a warrant and the papers on which it was issued, or against personal searches made before a legal arrest. This rule in relation to section 12 was built up while its provisions appeared only in section 8 of the Civil Rights Law and before it became a constitutional provision in 1938, but the Court of Appeals has held that its enactment as part of the Constitution in that year in no way changed the interpretation of the language previously built up with respect to the statute. (*People* v. *Richter's Jewelers,* 291 N. Y. 161, 168–169.) Therefore, as a general proposition, a search and seizure of one's person following his lawful arrest, violates no law. Here, the petitioner, being under legal arrest, could be searched for evidences of the crime for which he was arrested. (*People* v. *Chiagles,* 237 N. Y. 193, 195.) Anything discovered in the search could be seized and used in

evidence. (*People* v. *Defore*, 242 N. Y. 13.) And its use in evidence would not offend section 6 of article I of the State Constitution by thus, in effect, rendering him a witness against himself in the criminal case. (*People* v. *Richter's Jewelers*, 291 N. Y. 161, 167, *supra*; *People* v. *Creeden*, 281 N. Y. 413.)

It is clear, therefore, that the petition fails to show that the statute has operated or does operate in any manner in violation of the petitioner's guarantee against unreasonable searches and seizures. This particularly follows in view of the express statement therein that the petitioner refused to submit to the test when demanded and that no test was made or attempted. Therefore, it is proper here to apply the general rule that one may not urge the unconstitutionality of a statute where he is not harmfully affected by the particular feature of the statute alleged to be in conflict with the Constitution. (See *People* v. *Wolf*, 220 App. Div. 71.) "One who would strike down a state statute as obnoxious to the Federal Constitution must show that the alleged unconstitutional feature injures him." (Mr. Justice BRANDEIS in *Premier-Pabst Co.* v. *Grosscup*, 298 U. S. 226, 227.)

In any event, the statute, when considered generally, does not stand for any unreasonable search or seizure. This, because it is premised upon the consent of the licensee to submit to the test when demanded. The licensee is expressly given the option of refusal. Whether in another particular case there may be an unreasonable search or seizure or a denial of due process where a test is administered in the absence of the licensee's consent (see *Rochin* v. *California*, 342 U. S. 165) is another matter and is not now being considered.

3. *The statute and the constitutional provisions for equal protection of laws.*

The court, without hesitation, rejects the claim that the statute operates to deprive the petitioner of the equal protection of the laws guaranteed by our Federal and State Constitutions. "The essence of the right to equal protection of the laws is that all persons similarly situated be treated alike." (*Myer* v. *Myer*, 271 App. Div. 465, 472, affd. 296 N. Y. 979; citing *Frost* v. *Corporation Comm.*, 278 U. S. 515, 522; *Atchison, Topeka & Santa Fe R. R. Co.* v. *Matthews*, 174 U. S. 96.) The statute in question does affect alike all persons similarly situated, i.e., persons licensed to operate motor vehicles upon the highways of this State. The fact that it does not apply with equal force

to unlicensed operators is immaterial from the constitutional standpoint. The Constitution does not require that a vehicle and traffic law shall apply equally in all respects to licensed and unlicensed operators of vehicles. The licensed operator possesses a qualified right granted by the State. He stands in a class different from an unlicensed operator of a vehicle and is subject to legislation specially applying to those persons in his class.

4. *The statute and the due process clauses of the constitutions.*

The objection that the statute violates the due process clauses of the State Constitution and the Fourteenth Amendment of the Federal Constitution seems to have considerable merit. These clauses stand for protection against the arbitrary exercise of the powers of government. Adherence to the spirit thereof guarantees a continuation of freedom for all blessed with residence in this State and Country. By virtue thereof, a resident here is assured of the full enjoyment of the rights of a free person. No matter how laudable the purpose of a statute, it is the duty of the court to strike it down if it provides for summary and substantial infringement upon a prerogative of a free person at the hands of administrative officers without affording him an opportunity of a hearing.

A studied and critical examination of the particular statute as written, has caused this court great concern in that it is absolutely lacking in reasonable safeguards against arbitrary and unreasonable action by police officers and the Motor Vehicle Commissioner. If it were written to provide for the demanding of the submission to a test only after a driver had been duly arrested and to provide for action by the commissioner on the sworn report of the officer making the demand, with a further provision whereby the driver could have a hearing, if demanded, with temporary suspension of license in the meantime, and with revocation to follow in the absence of the due demand for a hearing or upon due proof on a hearing, this court would, without hesitation, approve the statute.

Under the statute, as written, any " *police officer* ", whether he be a State trooper, city patrolman, deputy sheriff or town constable, may approach a motor vehicle operator, and claiming to have reasonable grounds to suspect him of then operating a vehicle in an intoxicated condition, demand that he give blood for a chemical test or that he submit to one of the other chemical tests provided for by the statute. This may, in fact,

be done upon the street without the making of an arrest and without the presence of witnesses. In fact, the officer may say to a motorist, "Pull over to the curb. It looks to me as if you are drunk. I want you to come with me for the taking of a test of your blood." If the driver refuses, or if the officer assumes a refusal on the driver's part, his license may be revoked without a hearing upon a mere ex parte communication by the officer to the commissioner.

Then, too, whether or not the claimed intoxicated driver is arrested, there is no provision for a record by the officer of the facts leading him to believe that the driver is intoxicated or of his alleged refusal to submit to the test. The officer concludes that he has reason to believe the driver is intoxicated — all that is required is a mere suspicion and mental operation on his part — and then further comes to a determination that the driver has refused to submit to the test, and thereupon the officer, in some manner, communicates his belief and the alleged refusal of the driver to the commissioner. There is no provision for any sworn report. Under the law, as written, the commissioner may act on a letter, telegram, telephone message or other unsworn statement from the police officer. And, furthermore, he may act without a hearing.

Thus, *in the first place*, under this statute, as written, an auto driver may be restrained of his liberty without due process; that is, without process, he may be stopped on the highway by an officer and, thereupon, without process and without an arrest being made, a demand may be made upon him that he accompany the officer and submit to a test to determine whether or not he is intoxicated. Of course, it would be lawful for an officer to stop a motor vehicle driver upon the highway if the officer has reasonable grounds to believe the driver is intoxicated; and it is argued that there would be no involuntary action amounting to restraint in that the driver when stopped or approached by the officer has the choice of whether or not he shall accompany the officer and submit to the test as demanded by him. Such argument falls, however, for it is clear that everyone except possibly a hardened criminal or a very wise man would be under the feeling of some duress when any demand is made upon him by an officer of the law, especially if the officer is badged and armed. The feeling is natural and proper, and this court would not want it otherwise, for there must be respect for the authority of police officers. On the other hand, conferring upon police officers the right to make

a request under the guise of authority concerning one's person without specific process and without lawful arrest clearly amounts to an unlawful infringement upon one's liberty.

Also, *in the second place*, we have here a statute providing, in effect, that the commissioner may revoke a driver's license upon mere hearsay without a hearing. Recent judicial statements indicate that a statute having this effect is not to be approved. Judge FROESSEL of the Court of Appeals has fairly recently said that "A license to operate an automobile is of tremendous value to the individual and may not be taken away except by due process." (*Matter of Wignall v. Fletcher,* 303 N. Y. 435, 441.) It "is not a gift or favor from a sovereign. * * * It is of real value and may not be revoked arbitrarily and taken away capriciously." (Per MURRAY, J., in *People v. Marinelli,* 37 N. Y. S. 2d 321, 325, 326; see, also, *Matter of Goodwin v. Mealey,* 173 Misc. 169.)

The language of early decisions on the subject of the rights of a licensee must be read in the light of the fact that the development of the motor vehicle law started when motor vehicles were considered not particularly useful while, on the other hand, it is now the fact that the motor vehicle is clearly a necessity to our modern way of life. Millions of the taxpayers' dollars have been used for the construction and improvement of our highways, and more millions are spent annually for new highways and for the improvement and upkeep of the existing highways. These highways are maintained as a governmental function (40 C. J. S., Highways, p. 25) and it seems trite for one to say that all persons are entitled to use the same subject only to reasonable regulation. To many persons, the right to own a motor vehicle and the right to possess a license to drive the same are among the most cherished rights of a citizen in this free country. The very livelihood of many, such as chauffeurs, truckers, farmers, etc., and the very welfare of their families depend upon their right to use the highways. In fact, it is clear that one's inalienable right to "liberty and the pursuit of happiness" is curtailed if he may be unreasonably kept off the highways maintained at his expense. In fact, one court has just recently gone so far as to say that "the freedom to make use of one's own property, here a motor vehicle, as a means of getting about from place to place, whether in pursuit of business or pleasure, is a 'liberty', which, under the Fourteenth Amendment cannot be denied or curtailed by a state without due process of law."

(*Wall* v. *King,* 206 F. 2d 878, 882.) In any event, the right of a citizen to drive a motor vehicle upon the highways is to be safeguarded against the whim or caprice of the police or administrative officers. Conscientious approval may not be given to a statute authorizing the final revocation of a driver's license by loose and informal procedure, for thereby "every automobile driver in the State will be at the mercy of the commissioner and his assistants." (See *Matter of Wignall* v. *Fletcher, supra,* 441.)

In any event, the foregoing leads to the holding that one possessing a driver's license and having the proper ability and qualifications to drive a car, may not be deprived of his license without opportunity to be heard upon all possible issues of law and fact. The commissioner would be acting arbitrarily in any given case if he revoked one's license without a hearing where there are possible bona fide issues as to the right to revoke.

In conclusion, it is clear that action by police officers and the commissioner under this particular statute may be such that a car driver is deprived of his constitutional rights. It is said that "The constitutional validity of law is to be tested, not by what has been done under it, but what may, by its authority, be done." (*People ex rel. Beck* v. *Graves,* 280 N. Y. 405, 410.) "Not what has been done under a statute, but what may reasonably be done under it, is the test of its validity". (*Matter of Richardson,* 247 N. Y. 401, 420–421.) The particular statute, therefore, is held to be unconstitutional because of the failure to contain a provision limiting its application to a case where there has been a lawful arrest and in that there is no provision entitling the licensee to an ultimate hearing upon an adequate record before the final taking away of his license.

In any event, there is sufficient showing in this petition before the court that the revocation of the petitioner's driver's license should be reviewed by this court. It sufficiently appears that the commissioner's action in revoking the license was based upon hearsay and not upon any hearing, record or adequate findings. This indicates arbitrary and unreasonable action on the part of the commissioner. Finally, there is a prima facie showing entitling the petitioner to a hearing, inasmuch as he has not had one. Therefor, the motion of the respondent to dismiss the petition is denied and he shall file his answer.

This decision has to do with due protection of one against arbitrary or unlawful revocation of his driver's license, and,

therefore, is not intended to and should not affect the practice established by the police in various municipalities or sections of the State of requesting one to submit to a chemical test where he has been duly arrested for driving while intoxicated, nor should it limit the lawful use of the results of such a test when voluntarily submitted to.

Submit order on notice.