**In the Interest of I., R.L., A Person under Eighteen Years.**

**No. 860184–CA.**

Court of Appeals of Utah.

July 15, 1987.

---

John L. Chidester, Heber City, for appellant.

David L. Wilkinson, Atty. Gen., Bruce M. Hale, Asst. Atty. Gen., Joseph E. Tesch, Tesch & Hufnagle, Heber, for respondent.

Before GARFF, GREENWOOD and BENCH, JJ.

## OPINION

GARFF, Judge:

RLI appeals from a juvenile court finding that he violated Utah Code Ann. § 41-6-44 (1977) by driving while intoxicated. The court fined him $150.00, ordered him to pay $100.00 into the Victim's Restitution Fund, and revoked his driving privileges for ninety days.

On May 12, 1985, appellant RLI was involved in a head-on collision which injured the driver of the other vehicle. Two investigating peace officers concluded that because he was alone in the vehicle he was the driver, and that he was under the influence of alcohol because of his speech, behavior, and alcoholic odor. The investigating officers sent him to the Wasatch County Hospital in an ambulance, but did not place him under arrest. At the hospital, a third officer also failed to place him under arrest. A medical technician assisted this third officer by taking a blood sample from appellant. The officer, however, did not inform appellant that the purpose of the blood test was to determine his blood alcohol content.

At trial, appellant's counsel moved to suppress the blood test results. The court denied the motion to suppress and found that on May 12, 1985, the juvenile operated a motor vehicle under the influence of an intoxicant.

## I

■ The first issue in this case is whether the blood test result should have been excluded as the product of an unconstitutional search and seizure. The purpose of constitutional provisions against unreasonable searches and seizures is to protect personal privacy and dignity against unwarranted intrusion by the state. *Mapp v. Ohio*, 367 U.S. 643, 646–53, 81 S.Ct. 1684, 86–90, 6 L.Ed.2d 1081 (1961). The fourth amendment of the U.S. Constitution protects against unreasonable warrantless searches, searches that exceed the scope of a warrant, and personal searches prior to a legal arrest. *Schutt v. MacDuff*, 205 Misc. 43, 127 N.Y.S.2d 116, 124 (1954).

The U.S. Supreme Court in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), found blood testing procedures to "plainly constitute searches of persons" within the meaning of the fourth amendment, stating:

> compulsory administration of a blood test ... plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment.... Such testing procedures plainly constitute searches of "persons" and depend antecedently upon seizures of "persons", within the meaning of that Amendment.... [T]he Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner. In other words, the questions we must decide in this case are whether the police were justified in requiring petitioner to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness.

*Id.* at 767; 86 S.Ct. at 1834; 16 L.Ed.2d at 914.

■ In *Schmerber*, the arresting officer was justified in requiring defendant's submission to the blood test because he "plainly [had] probable cause" to arrest him and charge him with driving under the influence of alcohol. In determining whether the means and procedures the officer employed in taking his blood respected relevant fourth amendment standards, the Supreme Court considered whether the arresting officer was required to obtain a search warrant because "search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned." *Id.* at 770, 86 S.Ct. at 1835. The Court concluded that "the attempt to secure evidence of blood-alcohol content in this case was an appropriate incident to the petitioner's arrest" because the arresting officer could reasonably believe that he was confronted with an emergency in which the delay necessary to obtain a warrant could result in the destruction of the evidence because of natural dissipation of alcohol in a person's blood stream. *Id.* at 770–71, 86 S.Ct. at 1835–36. Further, such a blood test was a reasonable type of test because blood tests are commonplace, the quantity of blood extracted was minimal, there was virtually no risk, trauma, or pain involved, and it was performed in a reasonable manner by a physician in a hospital environment. Therefore, requiring submission to a blood test following a lawful arrest is not a violation of the fourth and fourteenth amendment right to be free from unreasonable searches and seizures.

In the present case, we must, as in *Schmerber*, decide: (1) whether the police were justified in requiring appellant to submit to the blood test, and (2) whether the means and procedures employed in taking his blood respected relevant constitutional standards of reasonableness.

Considering the second issue first, the means and procedures employed in taking appellant's blood were substantially similar to those employed in *Schmerber*. The test involved the same degree of exigency as in *Schmerber*, was a routine taking of blood, and was performed by a medical technician in a hospital setting under accepted medical

practices. Therefore, the means and procedures involved in taking the blood were constitutional. However, the major issue in the present case is whether the peace officers were justified in requiring appellant to give blood to be tested.

There was clearly probable cause to place appellant under arrest for a violation of Utah Code Ann. § 41–6–44(a) (1977),[1] because of the investigating officer's observations of appellant's slurred speech, erratic behavior, odor of alcohol, and because appellant was the only person in his vehicle. However, appellant was not placed under arrest prior to the taking of the blood sample. Furthermore, even though the officer stated that appellant was coherent enough to understand him at the time of taking the blood, he did not even advise appellant of his rights, inform him of the nature of the blood test, nor warn him of the consequences of refusal to submit to the blood test. Obviously, no arrest occurred, and the taking of the blood sample was not justified as a search incident to arrest. After appellant was released from the hospital, he returned home and was served four days later with a summons and citation.

■ An officer's demand that a non-arrested motorist submit to a chemical test may lead to arbitrary and unreasonable action by police officers,[2] and to a potentially unconstitutional search and seizure. However, the constitutional right to be secure against unreasonable searches and seizures may be waived if the defendant gives actual consent to the search in question.[3]

The next inquiry is whether appellant, in fact, consented to the blood test, either through statutorily implied consent or actual consent. The relevant portions of Utah's implied consent law states:

(a) Any person operating a motor vehicle in this state shall be deemed to have given his consent to a chemical test or tests of his breath, blood or urine for the purpose of determining whether he was driving or in actual physical control of a motor vehicle while under the influence of alcohol, any drug, or combination of alcohol and any drug, provided that such test is or tests are administered at the direction of a peace officer having grounds to believe such person to have been driving or in actual physical control of a motor vehicle while under the influence of alcohol, any drug, or combination of alcohol and any drug....

. . .

(b) If such person has been placed under arrest and has thereafter been requested by a peace officer to submit to any one or more of the chemical tests provided for in subsection (a) of this section and refuses to submit to such chemical test or tests, such person shall be warned by a peace officer requesting the test or tests that a refusal to submit to the test or tests can result in revocation

---

1. The statute, in relevant part, states: "[i]t is unlawful and punishable as provided in subsection (d) of this section for any person who is under the influence of alcohol, or who is under the influence of any drug or combined influence of alcohol or any drug to a degree which renders the person incapable of safely driving a vehicle, to drive or be in actual physical control of any vehicle within this state...."

2. The New York court stated, in construing a similar statute, that "[u]nder the statute as written, any 'police officer,' whether he be a state trooper, city patrolman, deputy sheriff or town constable, may approach a motor vehicle operator, and claiming to have reasonable grounds to suspect him of then operating a vehicle in an intoxicated condition, demand that he give blood for a chemical test or that he submit to one of the other chemical tests provided for by

the statute. This may, in fact, be done upon the street without the making of an arrest and without the presence of witnesses. In fact, the officer may say to a motorist, 'Pull over to the curb. It looks to me as if you are drunk. I want you to come with me for the taking of a test of your blood.' If the driver refuses, or if the officer assumes a refusal on the driver's part, his license may be revoked without a hearing upon a mere ex parte communication by the officer to the commissioner." *Schutt v. MacDuff*, 205 Misc. 43, 127 N.Y.S.2d 116, 126 (1954).

3. "Consent to a search is not to be lightly inferred, but should be shown by clear and convincing evidence, and any consent must be voluntary and uncoerced, either physically or psychologically." 68 Am.Jur.2d *Searches and Seizures*, § 46 (1973).

of his license to operate a motor vehicle....

Utah Code Ann. § 41–6–44.10(a) and· (b) (1981).

Although this statute appears to legislatively create actual consent to a chemical test on behalf of any person operating a motor vehicle, it does not. It seems enigmatic to interpret the statute to mean that if a driver has impliedly consented to a blood test under subsection (a), he may nevertheless refuse under subsection (b) and withdraw his supposed consent. In fact, "consent" describes a legal act, and "refusal" a physical reality. By implying consent, the statute removes the right of a driver to lawfully refuse, but cannot remove his physical power to refuse. The Oregon Supreme Court, concerning drivers arrested for driving under the influence, has observed:

> [R]efusal as contemplated by the statute is something other than withholding of consent because consent is legally implied. It is a refusal to comply with the consent which has already been given as a condition of a license to drive. The purpose of a warning of license suspension following a refusal is to overcome an unsanctioned refusal by threat instead of force. It is not to reinstate a right to choice, let alone a voluntary and informed choice, but rather to non-forci-

bly enforce the driver's previous implied consent.

*State v. Newton*, 291 Or. 788, 636 P.2d 393, 398 (1981).

■ Thus, the purpose of such a law is to avoid the violence which often attends attempts to forcibly test recalcitrant drivers.[4] Through the threat of potential license suspension and the spectre of use of a refusal to submit to a blood test as evidence in any civil or criminal action, police may persuade otherwise unwilling drivers to submit to the test. Nothing suggests a legislative intent to create a consent search, but only to create a means of non-physical persuasion.

Furthermore, implied consent by statute cannot supersede an otherwise constitutionally protected right. For this reason, the Utah Supreme Court in *State v. Cruz*, 21 Utah 2d 406, 446 P.2d 307 (1968), required *actual* consent to a blood alcohol test when the driver was not under arrest. *Cruz* stated that implied consent is valid only in arrest situations, and only after an opportunity is given to refuse to comply with the implied consent law.

In February 1977, the version of Utah Code Ann. § 41–6–44.10 (1975) which was interpreted in *Cruz*, was amended by changing the words "arresting officer" to "peace officer."[5] The State argues that

---

**4.** In the instant case the peace officer testified that "[w]e tried to calm him down so he [the medical technician] could hold him [appellant] still enough to be able to draw the blood, and he drew the blood.... He [appellant] was shaking. Occasionally, he's [sic] twitch and squirm around, as though he were in shock or his eyes would sort of flutter as he laid back. He could hear us and he was aware of what was around him, but we just wanted to make sure that we could [get] him to hold still long enough to not—to not cause any injury as he drew the blood."

**5.** The statute was amended as follows:

(a) Any person operating a motor vehicle in this state shall be deemed to have given his consent to a chemical test or tests of his breath, [or] blood, or urine for the purpose of determining [the alcoholic content of his blood] whether he was driving or in actual physical control of a motor vehicle while under the influence of alcohol, any drug, or combination of alcohol and any drug, provided that such test is or tests are

administered at the direction of a peace officer having [reasonable] grounds to believe such person to have been driving [in an intoxicated condition] or in actual physical control of a motor vehicle while under the influence of alcohol, any drug, or combination of alcohol and any drug. [The arresting] A peace officer shall determine [within reason] which of the aforesaid tests shall be administered.

No person, who has been requested pursuant to this section to submit to a chemical test or tests of his breath, blood, or urine, shall have the right to select the test or tests to be administered. The failure or inability of a peace officer to arrange for any specific test shall not be a defense to taking a test requested by a peace officer nor be a defense in any criminal, civil or administrative proceeding resulting from a person's refusal to submit to the requested test or tests.

[(b) Any person operating a motor vehicle in this state shall be determined to have given his consent to a chemical test or tests of his blood or urine for the purpose of determining whether

this change altered the results of *Cruz* to such an extent that implied consent is now permissible in a non-arrest situation, and, therefore, a warrant is not necessary to draw blood for testing. We are not persuaded by this argument. We conclude that the changes in the statute do not alter the basic constitutional protection of requiring a warrant for search and seizure prior to an arrest, and construe the statute to require this procedure.

■ In summary, Implied consent justifies warrantless searches under the following circumstances:

(1) There is probable cause to believe the suspect was driving or in control of a motor vehicle while having a statutorily prohibited blood alcohol content,

(2) The suspect was arrested, and

(3) The method of extraction of blood was reasonable.

The rationale behind permitting such a search is that the blood alcohol evidence dissipates over time, creating an exigent circumstance which justifies a warrantless search. Because appellant was not arrested, a warrantless search was not justified and he did not come under the implied consent statute. Therefore, to sustain his conviction, pursuant to *Cruz*, there must be a finding of actual consent. *Cruz*, 446 P.2d at 309.

■ The evidence indicates that appellant did not give actual consent to the blood test. There was nothing in his demeanor or behavior indicating actual consent. On the contrary, he apparently offered some resistance to the taking of blood. Further,

no one informed him that blood was being taken for purposes of determining blood alcohol content. If the officer had assumed appellant was under arrest, he should have requested that he submit to a blood test and have given him the opportunity to comply or refuse. If appellant had refused, the officer would then have been obligated to explain the consequences of refusal, which he did not do. Also, under the circumstances, reasonable minds could conclude that blood was being withdrawn for medical rather than law-enforcement purposes.

Because actual consent cannot be inferred from the statute and appellant did not actually consent to the procedure, the taking of the blood sample did not come within the consent exception to reasonable search and seizure requirements. Therefore, we conclude that the police failed to follow proper procedures and were not justified in requiring appellant to submit to the blood test. Consequently, the blood test evidence must be excluded as the product of an unconstitutional search and seizure.

The purpose of the implied consent law is to achieve the legitimate legislative purpose of curtailing the terrible carnage on the highways through quick removal from the highway of those drivers who are a menace to themselves and to others because they operate a motor vehicle while under the influence of alcohol and/or drugs. This purpose can be realized without compromising fundamental constitutional rights. Present procedures, if followed, are consistent with this concept.

he was driving or was in actual physical control of a motor vehicle while under the influence of any narcotic drug or other drug if arrested for any offense where, at the time of arrest, the arresting officer has reasonable grounds to believe such person to have been driving or in actual physical control of a motor vehicle while under the influence of a narcotic drug or other drug.]

[ (c) ] (b) If such person has been placed under arrest and has thereafter been requested by a peace officer to submit to any one or more of the chemical tests provided for in [subsections] subsection (a) [or (b) ] of this section and refuses to submit to such chemical test or tests, such person shall be warned by a peace officer re-

questing the test or tests that a refusal to submit to the test or tests can result in revocation of his license to operate a motor vehicle. Following this warning, unless such person immediately requests the chemical test or tests as offered by a peace officer be administered, [the] no test shall [not] be given and [the arresting] a peace officer shall [advise the person of his rights under this section] submit a sworn report that he had grounds to believe the arrested person had been driving or was in actual physical control of a motor vehicle while under the influence of alcohol or any drug or combination of alcohol and any drug and that the person had refused to submit to a chemical test or tests as set forth in subsection (a) of this section.

## II

■ The second issue is whether there was sufficient evidence, without the blood test, to sustain appellant's conviction.

The trial judge, the trier of fact in the instant case, was discussing the blood test issue with counsel during trial, focusing on the test's significance and admissibility. In this context, he made the following gratuitous comment: "I think without the blood test you have some problems. I think without the blood there is at least some reasonable doubt...." Because he was not evaluating all the evidence previously presented and because such a finding was not made in his ultimate findings of fact, this comment, at this point in the proceedings, does not rise to the level of a finding of fact, and we will disregard it. Thus, the issue remains whether or not the evidence, aside from the blood test results, was sufficient to sustain appellant's conviction.

The Utah Supreme Court, in *State v. Watson*, 684 P.2d 39, 41 (Utah 1984), stated that "[i]t is well settled that a reviewing court has the power to review a case on the sufficiency of the evidence." The court defined the standard of review in criminal cases in *State v. Petree*, 659 P.2d 443, 444–45 (Utah 1983):

[W]e review the evidence and all inferences which may reasonably drawn from it in the light most favorable to the verdict of the jury. We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted (citations omitted).... [T]his Court still has the right to review the sufficiency of the evidence to support the verdict. The fabric of evidence against the defendant must cover the gap between the presumption of innocence and the proof of guilt. In fulfillment of its duty to review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict, the reviewing court will stretch the evidentiary fabric as far as it will go. But this does not mean that the court can take a speculative leap across a remaining gap in order to sustain a verdict. The evidence, stretched to its utmost limits, must be sufficient to prove the defendant guilty beyond a reasonable doubt.

Pursuant to this standard, we review the sufficiency of the evidence from the record. In this case, the record shows the following facts: Appellant was involved in a serious head-on collision. He had been driving erratically in the wrong lane of traffic on a blind curve. The other driver stated that she saw only one person in appellant's truck just prior to the collision, and appellant was the only person found in the truck. Though upset, the appellant was not seriously injured and repeatedly made unsolicited, voluntary statements while not in custody, such as, "I am drunk. I am guilty. They should take me out and shoot me." At times he talked incoherently in a rambling manner, and "screamed and hollered." There was a strong alcoholic odor both at the scene of the accident and later at the hospital. Because no alcohol containers were found in the truck, the odor was coming from the appellant's person. In the non-custodial situation at the hospital, when his step-father asked him whether he had taken drugs, he stated, "No, just whiskey." The highway patrolman who testified and was at the hospital, was an eighteen year veteran, had investigated hundreds of drunk driving episodes, and had concluded the appellant was under the influence of intoxicants.

The defense presented no evidence.

We find from reviewing the evidence that reasonable minds could not entertain a reasonable doubt that the appellant committed the crime for which he was convicted and that the evidentiary fabric need not even be stretched to come to this conclusion. We therefore find, even excluding the blood test, that there is sufficient evidence to sustain appellant's conviction in the juvenile court and that the blood test evidence was only cumulative.

Appellant's conviction is affirmed.

GREENWOOD, J., concurs.

BENCH, Judge (concurring and dissenting):

I concur with the conclusion that the blood test was erroneously admitted into evidence but I reserve judgment on the constitutional basis for the conclusion.

The blood test would be admissible if appellant actually or impliedly consented. Actual consent is clearly absent. The narrow question before us is whether the test was admissible under Utah's implied consent statute. Utah Code Ann. § 41–6–44.-10 (1986).

The arrest of a motorist is the triggering mechanism of our implied consent statute. *State v. Cruz*, 21 Utah 2d 406, 446 P.2d 307 (1968). Other jurisdictions have also so ruled. *See* Lerblance, *Implied Consent To Intoxication Tests: A Flawed Concept*, 53 St. John's L.Rev. 39, 42 n. 9 (1978). The State contends the legislature attempted to delete the requirement of arrest by changing "arresting officer" to "peace officer." Yet, the statute still contemplates that motorists do not become subject to the implied consent law until after a formal arrest. Utah Code Ann. § 41–6–44.10(2) (1986) imposes sanctions where the motorist "has been placed under arrest and has thereafter been requested by a peace officer to submit to any one or more of the chemical tests provided...." The only exceptions to the arrest requirement are where the motorist is "dead, unconscious, or in any other condition rendering him incapable of refusing to submit to any such chemical test...." Utah Code Ann. § 41–6–44.10(3) (1986).

At the time the test was administered in the instant case, appellant was neither under arrest nor in a condition rendering him incapable of refusing the test. The test was therefore erroneously admitted under the implied consent statute. Because the issue may be decided on grounds of statutory construction, discussion of constitutional considerations is inappropriate. *State v. Wood*, 648 P.2d 71 (Utah 1982), and cases cited therein.

While I concur in the conclusion concerning the blood test, I believe the case should be remanded for a new trial. I therefore dissent from the result reached in the majority opinion.

Utah Code Ann. § 41–6–44(1) (1986) provides for alternative means of proving a person guilty of driving while intoxicated. The prosecution may prove, by chemical test, the person had a blood-alcohol content of .08% or greater. Alternatively, the prosecution may prove, by independent evidence, the person was under the influence of alcohol or any drug "to a degree which renders the person incapable of safely driving a vehicle." *See Kehl v. Schwendiman*, 735 P.2d 413, 415 (Utah App.1987).

As intimated by the majority, the trial judge in the instant case made no finding as to the sufficiency of independent evidence. At the conclusion of the State's case, appellant moved to suppress all evidence related to the blood test. The court took the matter under advisement and requested both parties to prepare and submit briefs on the motion. The State then suggested rather than wait for the court's ruling on the motion, appellant should proceed to present his case. In response, appellant explained that only if the court denied his motion would he then call expert witnesses to refute the State's claim of sufficient independent evidence. The court thereupon continued the balance of the trial to January 30, 1986. In a minute entry dated December 19, 1985, the date of trial, the court recorded:

> Prosecution evidence was presented. Attorneys will submit briefs by January 24, 1986 for Judge to determine admissability [sic] of certain evidence presented. Court's determination of admissability [sic] will determine whether or not defense evidence needs to be presented. Further hearing and/or disposition scheduled for January 30, 1986.

In a decision dated January 23, 1986, the court denied appellant's motion to exclude and admitted the blood test result into evidence. When trial reconvened on January 30, appellant, in light of the court's ruling, offered no evidence. The court then found the allegations in the petition to be true and entered judgment against appellant.

The trial court clearly reserved any finding whether sufficient evidence existed, independent of the blood test, to find appellant in violation of section 41–6–44(1). In its findings and decree, the court determined appellant was under the influence of alcohol *based solely on a blood alcohol level of .18%.*

The majority opinion, in light of the trial court's failure to do so, proceeds to make its own finding of sufficient independent evidence to affirm the judgment. However, it is not the function of this Court to make findings of fact. *Rucker v. Dalton,* 598 P.2d 1336 (Utah 1979). Nor is it the function of "an appellate court to decide disputed questions of fact in the first instance and then choose between affirmance and reversal by testing its factual conclusion against that which the trial court *might* have or ... *must* have reached for it to issue the judgment it did." *Nicpon v. Nicpon,* 9 Mich.App. 373, 157 N.W.2d 464, 467 (1968). (Emphasis in original.) Rather, the function of this Court is to review the record to determine whether substantial evidence exists to support the trial court's findings. *Reimschiissel v. Russell,* 649 P.2d 26 (Utah 1982).

The judgment in the instant case was based solely on the blood test. As the trial court failed to make a finding of sufficient independent evidence of intoxication, I would remand the case for a new trial.