**In the Interest of R.L.I., a person under eighteen years.**

**No. 870289.**

Supreme Court of Utah.

March 29, 1989.

---

John L. Chidester, Heber City, for appellant.

R. Paul Van Dam, David B. Thompson, Salt Lake City, for appellee.

DURHAM, Justice:

This case comes to us on a writ of certiorari from the Utah Court of Appeals. R.L.I., a minor, was tried in juvenile court and found guilty of operating a motor vehicle while under the influence of an intoxicant. He appealed the judgment of the juvenile court. On appeal, the Court of Appeals reversed the juvenile court's ruling on a motion to suppress evidence related to a blood test performed on R.L.I. but affirmed R.L.I.'s conviction. *In the Interest of I., R.L.*, 739 P.2d 1123 (Utah Ct.App.

1987). We vacate the opinion of the Court of Appeals and reverse.

On May 12, 1985, R.L.I. was involved in a head-on collision while operating a motor vehicle near Heber City, Utah. A Utah highway patrol trooper and a Wasatch County deputy sheriff investigated the accident. The highway patrol trooper who observed R.L.I. at the accident scene concluded that R.L.I. was under the influence of alcohol at the time of the accident but did not place him under arrest.

R.L.I. was taken by ambulance from the scene of the accident to the Wasatch County Hospital, where a third officer requested the taking of a blood sample for alcohol analysis. The trooper at the hospital did not arrest R.L.I., nor did he explain to R.L.I. that a blood sample was being extracted for law enforcement purposes. R.L.I. was not informed that he could refuse to submit to the blood test, and the evidence establishes that he did not consent to the testing procedure.

At trial, R.L.I. moved to suppress evidence of the blood test results. Relying upon this Court's holding in *State v. Cruz*, 21 Utah 2d 406, 446 P.2d 307 (1968), R.L.I. argued that the test results were inadmissible. The juvenile court denied R.L.I.'s motion to suppress, finding that R.L.I. impliedly consented to the blood test.

On appeal, the Utah Court of Appeals reversed the juvenile court's ruling on the motion to suppress and excluded the blood test evidence as the product of an unconstitutional search and seizure. After reviewing the sufficiency of the other evidence, however, the Court of Appeals sustained R.L.I.'s conviction. The Court of Appeals correctly reversed the juvenile court's ruling on the motion to suppress, but unnecessarily relied on constitutional analysis to do so.

■ Utah Code Ann. § 41–6–44.10 (1988) grants peace officers the authority to obtain blood samples from drivers who operate motor vehicles while under the influence of intoxicants. Section 41–6–44.-10(1)(a) provides:

A person operating a motor vehicle in this state is considered to have given his consent to a chemical test or tests of his breath, blood, or urine for the purpose of determining whether he was operating or in actual physical control of a motor vehicle while having a blood or breath alcohol content statutorily prohibited, or while under the influence of alcohol, any drug, or combination of alcohol and any drug under Section 41–6–44, if the test is or tests are administered at the direction of a peace officer having grounds to believe that person to have been operating or in actual physical control of a motor vehicle while having a blood or breath alcohol content statutorily prohibited, or while under the influence of alcohol, any drug, or combination of alcohol and any drug under Section 41–6–44.

Section 41–6–44.10(2)(a) provides in relevant part:

If the person has been placed under arrest, and has then been requested by a peace officer to submit to any one or more of the chemical tests under Subsection (1), and refuses to submit to the chemical test or any one or all of the tests requested, the person shall be warned by a peace officer requesting the test or tests that a refusal to submit to the test or tests can result in revocation of his license to operate a motor vehicle. Following this warning, unless the person immediately requests that the chemical test or tests as offered by a peace officer be administered, no test may be given.

Section 41–6–44.10(3) continues:

Any person who is dead, unconscious, or in any other condition rendering him incapable of refusal to submit to any chemical test or tests is considered to not have withdrawn the consent provided for in Subsection (1), and the test or tests may be administered whether the person has been arrested or not.

This Court interpreted the language of section 41–6–44.10 in *State v. Cruz*, 21 Utah 2d 406, 446 P.2d 307 (1968). In *Cruz*, the driver of an automobile involved in a serious accident (Cruz) was taken to a hospital for examination and treatment. At

the hospital, Cruz was asked by investigating officers to submit to a blood test to determine the alcoholic content of his blood. Although Cruz refused to submit to the test, a blood sample was drawn and a blood alcohol analysis was performed. At trial, the results of the blood test were admitted into evidence, and Cruz was subsequently convicted of automobile homicide. Cruz appealed his conviction, arguing that the blood test results were erroneously admitted because "the sample of his blood was taken against his will and contrary to the provisions of 41–6–44.10, U.C.A.1953 (Supp.1967)." *Id.* at 406, 446 P.2d at 308.

After reviewing the language of section 41–6–44.10 and case law from other jurisdictions with similar implied consent statutes, this Court concluded:

> [I]mplied consent to a chemical test arises only upon arrest and ... only an arrested person is compelled to elect whether he will submit to a chemical test or lose his license. Consequently a person prior to arrest has not given his implied consent to a chemical test and therefore his actual consent must be given.
>
> In the instant action, [Cruz] did not give his actual consent to the blood test and his forced submission thereto was not in compliance with the express terms of Section 41–6–44.10. The trial court erred in admitting the results of the test.

21 Utah 2d at 408, 446 P.2d at 309.

In the case before us, R.L.I.'s blood sample was obtained at a time when he was "neither under arrest nor in a condition rendering him incapable of refusing the test." *In the Interest of I., R.L.*, 739 P.2d at 1130 (Bench, J., concurring and dissenting). R.L.I.'s blood sample was thus taken contrary to the provisions of section 41–6–44.10. Because R.L.I. neither impliedly nor actually consented to the testing procedure, his blood test results were erroneously admitted at trial. We reaffirm our holding in *Cruz* and find it controlling here.

■ The Court of Appeals also erred in undertaking an independent review of the evidence under the circumstances in this case. As the dissenting opinion below points out, the trial judge did not evaluate or make findings regarding any of the evidence on intoxication except the blood test results, thereby effectively ending the trial before defendant put on his own evidence on intoxication. The blood test having been suppressed, defendant is entitled to a new hearing to permit him to introduce this evidence.

■ We also note that the standard of review used by the Court of Appeals was taken from cases involving criminal jury trials. The standard in juvenile cases involving violation of the criminal code was, prior to recent revisions in article VIII of the Utah Constitution, the Utah Rules of Civil Procedure, and the Juvenile Courts Act, similar in effect but different in its formulation. *See State in re L.G.W.*, 641 P.2d 127, 130 (Utah 1982).

■ The current content of the rules and statutes does not include a specific standard of review for nonjury juvenile court cases involving criminal violations, and we are therefore required to articulate one. We hold that the standard set forth in rule 52(a) of the Utah Rules of Civil Procedure is appropriate and applicable in such cases. The meaning and content of that standard was set forth in *State v. Walker*, 743 P.2d 191 (Utah 1987):

> [T]he content of rule 52(a)'s "clearly erroneous" standard, imported from the federal rule, requires that if the findings (or the trial court's verdict in a criminal case) are against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made, the findings (or verdict) will be set aside.

*Id.* at 193.

The application of this standard of review illustrates the impropriety in this case of the Court of Appeals' review of evidence on which the trial judge had not relied and had not made findings.

Reversed and remanded to the juvenile court for further proceedings consistent with this opinion.

HALL, C.J., HOWE, Associate C.J., and ZIMMERMAN, J., concur.

STEWART, J., concurs in the result.