Request of the Senate
No. 81-142

OPINION OF THE JUSTICES

June 12, 1981

■

532

The following request of the Senate for an opinion of the justices was adopted on April 23, 1981, and filed with the Supreme Court on April 29, 1981:

"Whereas, the Senate has under consideration SB 4-FN which makes certain changes in the law relative to the constitutional requirement that the state provide legal counsel to indigent defendants in certain criminal cases; and

"Whereas, some members of the Senate question the constitutionality of certain aspects of the proposed legislation; now, therefore, be it

"Resolved by the Senate;

"That the Justices of the Supreme Court are respectfully requested to give their opinion and answer the following question:

"Whether any provisions of SB 4-FN if amended in accordance with the recommendations of the judiciary committee violate any provision of the United States Constitution or the New Hampshire Constitution; and

"That the clerk of the Senate transmit copies of this resolution and SB 4-FN amended in accordance with the recommendations of the judiciary committee to the Justices of the Supreme Court."

The following answer was returned:

*To the Honorable Senate:*

Your question asks that we render our opinion on the constitutionality of Senate bill 4-FN, which proposes certain amendments to RSA ch. 604-A and RSA 169-B:12 I (Supp. 1979). RSA ch. 604-A, which was enacted following the United States Supreme Court's decision in *Gideon v. Wainwright*, 372 U.S. 335 (1963), is designed "to provide adequate representation for indigent defendants in criminal cases charged with felonies or misdemeanors, or any juvenile charged with being delinquent . . . ." RSA 604-A:1. RSA 169-B:12 I (Supp. 1979) provides for the appointment of counsel at the public's expense for minors charged with delinquency.

We consider first whether the proposed amendment to RSA 604-A:2 is constitutional. RSA 604-A:2 presently provides that the court shall appoint counsel to represent a criminal defendant if it is "satisfied after appropriate inquiry that the defendant is financially unable to obtain counsel. . . ." Thus, under the current statute the court need inquire only into the *defendant's own* financial status in determining whether he qualifies as an "indigent defendant." The proposed amendment to RSA 604-A:2, however, provides that the court shall appoint counsel only if the court is satisfied that "the defendant *and* persons liable for his support under RSA 546-A:2 . . . are financially unable to obtain counsel." (Emphasis added.) RSA 546-A:2 imposes upon a person whose financial resources are more than sufficient to meet his or her own needs "a duty to . . . contribute to the support of his or her wife, husband, child, father or mother in need."

There is nothing unconstitutional in extending the duty of support imposed by RSA 546-A:2 to encompass the expense of providing counsel to an indigent criminal defendant, although the legislature may want to consider whether it wishes to impose the expense of providing counsel on the children of a defendant. The existence of such a duty, however, may not interfere with an indigent's right to counsel "during every stage of the criminal proceedings against him." *Fuller v. Oregon*, 417 U.S 40, 53 (1974); *Powell v. Alabama*, 287 U.S. 45, 69 (1932). Thus, the court could not refuse to appoint counsel and allow the prosecution to proceed simply because one who is liable for the indigent defendant's support under RSA 546-A:2 and who is financially able to assume the cost of legal counsel refuses to incur that expense. *People v. Gustavson*, 131 Ill. App. 2d 887, 889, 269 N.E.2d 517, 519 (1971). The court could, of course, order a person who has a statutory duty to support the defendant to obtain counsel for the defendant, enforce

its order through its contempt powers, and stay the criminal prosecution pending resolution of the matter. This approach, however, could at some point raise constitutional questions regarding a defendant's right to a speedy trial. *See State v. Weitzman*, 121 N.H. 83, 86, 427 A.2d 3, 5 (1981).

There would be no constitutional infirmity in a statutory scheme that would allow the court to appoint counsel at State expense, permit the prosecution to proceed, and leave it to the State to seek reimbursement from the person having a duty of support under RSA 546-A:2. The proposed amendment to RSA 604-A:2, however, makes no provision for such a course of action but provides for court-appointed counsel only if the defendant *and* persons liable for his support under RSA 546-A:2 cannot afford counsel. The defendant is always entitled to "the guiding hand of counsel at every step in the proceedings against him." *Ferguson v. Georgia*, 365 U.S. 570, 572 (1961); *Chandler v. Fretag*, 348 U.S. 3, 10 (1954); *Powell v. Alabama*, 287 U.S at 69. If defendants are not afforded that right, then convictions would have to be overturned, thereby frustrating the very purpose of bringing to trial persons accused of crimes against society. It is our opinion, therefore, that the proposed amendment to RSA 604-A:2 is unconstitutional but that the legislature could amend RSA 546-A:2 to make it clear that the duty of support imposed by that statute includes the expense of providing counsel.

We next consider the constitutionality of the proposed amendment to RSA 169-B:12 I (Supp. 1979). That statute currently provides that, absent a valid waiver, all minors charged with delinquency shall have counsel appointed to represent them. Senate bill 4-FN would amend RSA 169-B:12 I (Supp. 1979) to require the court to appoint counsel only if it is satisfied that "the minor and persons liable for his support under RSA 546-A:2 . . . are financially unable to obtain counsel on their own."

■ The legislature's decision to provide counsel only to indigent minors charged with delinquency rather than to all minors charged with delinquency violates no constitutional provision. *See In re Gault*, 387 U.S. 1, 41 (1967). A person has no right to counsel at public expense merely because he happens to be a minor rather than an adult.

■■ Insofar as the proposed amendment to RSA 169-B:12 I (Supp. 1979) permits the court, in determining whether a minor is indigent and therefore entitled to court-appointed counsel, to consider the financial status of persons liable for the minor's support under RSA 546-A:2, however, it runs aground on the same consti-

tutional reef as does the proposed amendment to RSA 604-A:2. A juvenile's right to counsel during every stage of the proceedings against him cannot be made to depend upon the financial status of persons liable for his support under RSA 546-A:2 or their willingness to fulfill that support obligation at the time the court makes the determination of whether to appoint counsel. The legislature could, however, extend liability under RSA 546-A:2 to include the expense of counsel, require persons liable for a juvenile defendant's support to reimburse the government creditor for the cost of providing counsel, *see In re Ricky H.*, 2 Cal. 3d 513, 520–21, 468 P.2d 204, 208 (1970), and let the government creditor enforce that obligation with criminal sanctions. *See* RSA 639:4 (Supp. 1979).

Thus, it is our opinion that the proposed amendment to RSA 169-B:12 I (Supp. 1979) is unconstitutional to the extent that it requires the court to appoint counsel to represent an indigent minor only if "persons liable for . . . [the minor's] support under RSA 546-A:2 . . . are financially unable to obtain counsel on their own . . ." but that the legislature could require that persons obligated to support an indigent juvenile defendant under RSA 546-A:2 ultimately bear the cost of providing the minor with counsel.

We now turn to the proposed amendment to RSA 604-A:9. The current statute provides:

> "Any defendant whose sentence is unconditional discharge, conditional discharge, or probation and who has had counsel assigned to him at the [government's] expense . . . *may* be ordered by the court to repay . . . all of the fees and expenses paid on his behalf on such terms as the court may order."

(Emphasis added.) If amended in accordance with Senate bill 4-FN, RSA 604-A:9 I would provide as follows:

> "Any defendant whose sentence does not include actual incarceration in the state prison and who has had counsel or a public defender assigned to him at the expense of the state, county, city or town *shall* be ordered by the court to repay . . . all fees and expenses paid on his behalf on such terms as the court may order . . . . If a defendant is financially unable to repay the government creditor . . . , but is physically able to work, such defendant shall satisfy his debt at the rate of $25.00 per day by performing uncompensated work for any town, county or agency of the state. The court may include a schedule in its order for the performance of work in repayment of a

debt under this section which allows a defendant to seek additional employment other than that required for satisfaction of the debt."

(Emphasis added.) RSA 604-A:9 III would require that all petitions for court-appointed counsel contain language expressly notifying criminal defendants of the repayment obligations imposed by RSA 604-A:9 I. RSA 604-A:9 IV would provide that

"[n]otwithstanding any law to the contrary, if any repayment ordered pursuant to paragraph I becomes overdue, the court . . . may order . . . [the defendant's employer] to deduct from that person's wages or salary the appropriate amount and pay such amount to the board of probation, which shall refund such amount to the state, county, city or town as appropriate."

■ Many states have enacted recoupment statutes which, like the proposed amendment to RSA 604-A:9, are designed to enable the State to recover counsel fees expended on behalf of indigent defendants. *See James v. Strange*, 407 U.S. 128, 132–33 (1972). It is possible to draft such statutes to comport with the requirements of both the federal constitution, *see Fuller v. Oregon*, 417 U.S. 40 (1975), and N.H. CONST. pt. 1, art. 15. Although we have stated that the State constitution "requires that the costs of services rendered by attorneys on behalf of indigent defendants be borne by the government of this State," *Smith v. State*, 118 N.H. 764, 769, 394 A.2d 834, 838 (1978), we did not mean to imply that all such costs must *ultimately* be borne by the State in every case. The legislature could, for example, constitutionally require indigents who have or subsequently acquire the ability to repay the State to do so. *Opinion of the Justices*, 109 N.H. 508, 512, 256 A.2d 500, 502 (1969). The question is whether the particular repayment scheme before us violates any constitutional provisions.

■ Initially, we note that the proposed amendment to RSA 604-A:9 imposes an obligation to repay only upon those defendants "whose *sentence* does not include actual incarceration in the state prison . . . ." (Emphasis added.) Because the imposition of a sentence presupposes a valid conviction, we construe the proposed statute to apply only to *convicted* defendants. Indeed, to require a defendant who has been acquitted to reimburse the State for expenses resulting from the State's prosecution would certainly be unfair and perhaps unconstitutional. *Olson v. James*, 603 F.2d 150, 155 (10th Cir. 1979); *see Fuller v. Oregon*, 417 U.S. at 49–50; *James v. Strange*, 407 U.S. at 139.

 We also note that the proposed amendment to RSA 604-A:9 does not require defendants whose sentence includes actual incarceration in the State prison to reimburse the State for the cost of furnishing counsel. We assume that because convicted felons whose sentences exceed one year and a day of actual commitment are sent to the State prison, the administrative cost associated with having to delay seeking reimbursement for a prolonged period is too high to justify imposing on them a duty of reimbursement. On the other hand, someone serving only a few months in a house of correction, and probably being on probation thereafter, is easier to supervise and more likely to be gainfully employed within a reasonable period of time after counsel has been provided. This would also be true of someone merely fined or sentenced to probation. *See Fuller v. Oregon, supra* at 49 n.10; *Rinaldi v. Yeager,* 384 U.S. 305, 309–10 (1966). Thus, it is our opinion that there is a rational basis for distinguishing between defendants whose sentences include actual incarceration in the State prison and those whose sentences do not, and that imposing a repayment obligation only on the latter class would not violate the equal protection guarantees of the State or federal constitutions. *See Fuller v. Oregon supra; Rinaldi v. Yeager, supra* at 308–09.

 We are of the opinion, however, that RSA 604-A:9 IV, if enacted without further amendment, would violate the equal protection guarantees of the United States and New Hampshire Constitutions, U.S. CONST. amend. XIV, § 1; N.H. CONST., pt. 1, arts. 2 and 12, insofar as it provides for the garnishment of a former defendant's wages "[n]otwithstanding any law to the contrary. . . ." This statute, as we read it, would deprive indigent criminal defendants of the protective exemptions that RSA 512:21 affords to other civil judgment debtors. The United States Supreme Court has held that such discriminatory treatment runs afoul of equal protection principles. *James v. Strange,* 407 U.S. at 134–42. If the proposed statute were amended to afford indigent defendants the benefit of RSA 512:21, then this problem would be eliminated.

If the proposed statute were so amended, that aspect of subsection IV regarding wage withholding would not be constitutionally infirm. Under RSA 458:35-a, :35-b (Supp. 1979), for instance, a court may order employers to withhold an employee's wages to secure child support payments. Under RSA 161-C:21 (Supp. 1979), wage assignments for public child support payments are allowed. The proposed amendment places appropriate "teeth" in the repayment mechanism.

■ We are also of the opinion that RSA 604-A:9 I, as presently worded, would be unconstitutional. In *Fuller v. Oregon*, the United States Supreme Court sustained the constitutionality of an Oregon counsel fee recoupment statute which was "carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so." 417 U.S. at 53. RSA 604-A:9 I, however, would impose on all indigent defendants an absolute obligation to reimburse the State, regardless of a defendant's particular circumstances or his foreseeable ability to meet that obligation. The State cannot constitutionally take such action absent an escape clause based upon the indigent defendant's ability to pay. *Olson v. James*, 603 F.2d at 155; *Opinion of the Justices*, 109 N.H. at 512, 256 A.2d at 502; *see Fuller v. Oregon*, 417 U.S. at 53–54; *State v. Hess*, 86 Wash. 2d 51, 54, 541 P.2d 1222, 1223–24 (1975). The Oregon statute upheld in *Fuller* prohibited court-ordered repayment of fees unless the defendant "is or will be able to pay them," ORE. REV. STAT. § 161.665(3), and only utilized the contempt power to enforce such orders if the defendant had not made a good faith effort to pay. ORE. REV. STAT. § 161.685(2).

■ Rather than basing an exemption from the repayment obligation on ability to pay, the legislature has apparently sought to obviate this constitutional problem by providing that a physically fit indigent defendant may work off his debt at the rate of twenty-five dollars per day if he is otherwise unable to repay the government creditor.

The thirteenth amendment to the United States Constitution provides:

> "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States. . . ."

Under RSA 604-A:9 I, however, an indigent defendant who is unable to repay the government creditor "*shall* satisfy his debt . . . by performing uncompensated work" for the government. (Emphasis added.) Clearly, such compulsory service based upon the defendant's indebtedness constitutes involuntary servitude. *See United States v. Reynolds*, 235 U.S. 133, 144 (1914); *Clyatt v. United States*, 197 U.S. 207, 215 (1905). Because involuntary servitude may be imposed as punishment for a crime, U.S. CONST. amend. XIII; *see Pollock v. Williams*, 322 U.S. 4, 17 (1944), a statute such as RSA 651:2 VI-a (Supp. 1979), which provides for uncompensated public employment but only as part of a criminal sentence, would not offend the thirteenth amendment. Repayment of the cost

of legal counsel assessed against one who has been convicted of a crime, however, is not part of his punishment for the crime. *Wicks v. City of Charlottesville*, 215 Va. 274, 279, 208 S.E.2d 752, 756 (1974) (quoting *Commonwealth v. McCue*, 109 Va. 302, 304, 63 S.E. 1066, 1067 (1909)); *see Anderson v. Ellington*, 300 F. Supp. 789, 793 (M.D. Tenn. 1969). Consequently, a statute *requiring* a convicted defendant who is unable to reimburse the State for such expenses to satisfy his debt by performing uncompensated labor for the State would be proscribed by the thirteenth amendment. *See United States v. Reynolds, supra* at 149–50; *Anderson v. Ellington, supra* at 793; *Wright v. Matthews*, 209 Va. 246, 248–49, 163 S.E.2d 158, 160 (1968). If made optional, however, there would be no constitutional infirmity in *permitting* the recipient of counsel at State expense, who later becomes able to pay, to work rather than pay.

 It is no answer to say that the "servitude" that would be imposed by RSA 604-A:9 I is not involuntary because the defendant is free to waive his right to counsel and thereby not incur that expense. To espouse this position would be to condition an indigent defendant's enjoyment of his thirteenth amendment rights upon his relinquishment of his sixth amendment right to counsel. To require a person to surrender one constitutional right in order to gain the benefit of another is simply intolerable. *See Simmons v. United States*, 390 U.S. 377, 394 (1968); *State v. Williams*, 115 N.H. 437, 444, 343 A.2d 29, 34 (1975) (Grimes, J., dissenting). We recognize that the federal constitution does not forbid "every government-imposed choice in the criminal process that has the effect of discouraging the exercise of constitutional rights." *Chaffin v. Stynchcombe*, 412 U.S. 17, 30 (1973); *McGautha v. California*, 402 U.S. 183, 213 (1971). Nevertheless, there are some choices which the State cannot require a defendant to make, *e.g.*, *Sanitation Men v. Sanitation Comm'r.*, 392 U.S. 280, 283–85 (1968); *United States v. Jackson*, 390 U.S. 570, 581–83 (1968), and a choice between constitutional rights is one of them. *See Simmons v. United States, supra* at 394.

 It is our opinion, however, that the legislature could constitutionally require a physically fit indigent defendant who is financially unable to reimburse the government creditor for the expense of counsel to satisfy his debt by performing uncompensated work for the government as a condition of probation. A person convicted of a crime is not constitutionally entitled to probation. *Escoe v. Zerbst*, 295 U.S. 490, 492–93 (1935); *Douglas v. Sigler*, 386 F.2d 684, 687 (8th Cir. 1967); *Shum v. Fogliani*, 82 Nev. 156, 158–59,

413 P.2d 495, 496–97 (1966); *State v. Hewett,* 270 N.C. 348, 351, 154 S.E.2d 476, 478 (1967). "Probation is . . . conferred as a privilege and cannot be demanded as a right." *Burns v. United States,* 287 U.S. 216, 220 (1932); *see United States v. Alarik,* 439 F.2d 1349, 1351 (8th Cir. 1971); *In Re Osslo,* 51 Cal. 2d 371, 377, 334 P.2d 1, 5 (1958). Because probation "comes as an act of grace to one convicted of a crime . . . [it] may be coupled with such conditions in respect of its duration as [the legislature] may impose." *Escoe v. Zerbst, supra* at 492–93. We are therefore of the opinion that if it were made a condition of an indigent defendant's probation that he repay the government creditor by performing uncompensated labor for a city, town, county, or agency of the State, and if work which the defendant was capable of doing was available as a means of repayment but the defendant refused to perform such work and otherwise failed to reimburse the government creditor, a revocation of his probation would not offend either the State or federal constitutions. Any chilling effect of such a plan on the exercise of the right to counsel is not greater than is experienced by persons who have worked hard and who have accumulated some savings but are forced to expend those savings to obtain counsel because they are not indigent. There is little difference between requiring the fruits of past labor to be spent for counsel and requiring future labor to pay for the same thing. Of course, this sanction would be available only during the defendant's probationary period. *See* RSA 651:2 V.

For the same reasons, it is our opinion that the legislature could, consistent with the State and federal constitutions, amend RSA 651:2 VI (Supp. 1979) so as to require an indigent defendant who cannot repay the government creditor to satisfy his debt by performing uncompensated labor for the government pursuant to a conditional discharge. Any form of compulsory service imposed on a defendant except as a condition of probation or discharge, however, would be of doubtful constitutionality.

■ We reemphasize that a constitutional recoupment scheme can be devised. While all indigent defendants have the right to court-appointed counsel, the constitution does not require that they "remain forever immune from any obligation to shoulder the expenses of their legal defense. . . ." *Fuller v. Oregon,* 417 U.S. at 53–54; *see Wicks v. City of Charlottesville,* 215 Va. at 280, 208 S.E.2d at 757. Any repayment statute, however, must accommodate the constitutional considerations discussed herein.

We have considered the other provisions of Senate bill 4-FN and find no constitutional infirmity in them. Therefore, other than with

respect to certain language in the proposed amendments to RSA 169-B:12 I (Supp. 1979), RSA 604-A:2, and RSA 604-A:9, we answer your inquiry in the negative.

WILLIAM A. GRIMES
MAURICE P. BOIS
DAVID A. BROCK
JOHN W. KING

June 12, 1981

Justice Douglas asks to be excused from expressing an opinion for reasons which might be thought to disqualify him. *See Opinion of the Justices*, 116 N.H. 351, 357, 358 A.2d 667, 672 (1976).

*Jon Meyer*, on behalf of the N.H. Civil Liberties Union, filed a memorandum in support of an affirmative answer.