STATE of Utah, In the INTEREST of
W.B.J., a person under eighteen
years of age.

W.B. J., Appellant,

v.

State of Utah, Appellee.

No. 961773–CA.

Court of Appeals of Utah.

Oct. 1, 1998.

Mary C. Corporon, Corporon & Williams, P.C., Salt Lake City, for Appellant.

Jan Graham, Atty. Gen. and Barnard N. Madsen, Ass't. Atty. Gen., Civil Appeals Div., Salt Lake City, for Appellee.

Before DAVIS, P.J., and BENCH and ORME, JJ.

OPINION

BENCH, Judge:

W.B.J., a minor, appeals from a Fourth District Juvenile Court judgment finding him guilty of possession of marijuana and possession of drug paraphernalia. W.B.J. argues

that he is entitled to a new trial because the court erred in failing to appoint counsel to represent him at trial. We affirm.

## BACKGROUND

In July 1996, a petition was filed in Third District Juvenile Court alleging that W.B.J. had committed theft by deception and vehicle burglary. A second petition, filed in August 1996, alleged that W.B.J. had unlawfully possessed or consumed alcohol, unlawfully possessed marijuana, and unlawfully possessed drug paraphernalia. The court consolidated the two petitions.

At the arraignment in the third district, the court advised W.B.J. of his right to counsel. W.B.J. requested court-appointed counsel before proceeding further. Because W.B.J. is a minor living with his parents, his father completed a form disclosing the family's income so the court could evaluate the claim of indigence. After reviewing the form, the court appointed counsel for the pretrial hearing but required an additional order of the court for any further appointment. At the pretrial hearing, W.B.J. admitted the vehicle burglary allegation and the court dismissed the theft by deception allegation. Because the other three allegations related to events that occurred in Utah County, the court transferred the case to the Fourth District Juvenile Court.

At a pretrial hearing in the fourth district, W.B.J.'s mother completed a form disclosing the family's financial situation. After reviewing the form, the court found that W.B.J. did not qualify for court-appointed counsel. The case then proceeded to trial, with W.B.J. representing himself. The court found W.B.J. guilty of possession of marijuana and possession of drug paraphernalia.[1] The court then transferred the case back to the Third District Juvenile Court for disposition. The disposition did not include incarceration. W.B.J. now appeals the Fourth District Juvenile Court's delinquency judgment, focusing exclusively on the denial of court-appointed counsel.

1. The court dismissed the alleged alcohol viola-

## ISSUE

The trial court determined that W.B.J.'s family could afford counsel. W.B.J. has not challenged that determination, nor has he challenged the adequacy of the indigence form. Thus, the only issue on appeal is whether the trial court must determine W.B.J.'s indigence by focusing exclusively on his separate resources.

## STANDARD OF REVIEW

The Utah Supreme Court has determined "that the underlying empirical facts regarding the claim of indigency are reviewable for clear error; the conclusion as to whether those facts qualify the defendant as indigent is reviewable for correctness." *State v. Vincent*, 883 P.2d 278, 282 (Utah 1994). Also, the "degree of discretion the legal standard for 'indigency' bestows on trial courts ... [is] a rather broad pasture for trial judges applying the law of indigency to the facts before them." *Id.; State v. Pena*, 869 P.2d 932, 937–38 (Utah 1994).

The denial of the constitutional right to counsel requires reversal. *See State v. Sampson*, 808 P.2d 1100, 1111 (Utah Ct. App.1990), *cert. denied*, 817 P.2d 327 (Utah 1991), *and cert. denied*, 503 U.S. 914, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992). Reversal is not warranted, however, for the denial of a merely statutory right to counsel unless the appellant demonstrates the likelihood of a different result. *See State v. Young*, 853 P.2d 327, 361 (Utah 1993).

## ANALYSIS

In the landmark case *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the United States Supreme Court held that in proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, *the child and his parents* must be notified of the child's right to be represented by counsel retained by *them*, or if *they* are unable to afford counsel, that counsel will be appointed to represent the child.

tion at the pretrial hearing.

*Id.* at 41, 87 S.Ct. at 1451 (emphasis added). W.B.J. argues, however, that Utah law requires the juvenile court to determine indigence by focusing exclusively on the juvenile's separate resources. We disagree.

■ The United States Constitution requires appointed counsel only where the indigent is subject to incarceration. *See id.* The United States Supreme Court later unequivocally adopted "actual imprisonment as the line defining the constitutional right to appointment of counsel." *Scott v. Illinois,* 440 U.S. 367, 373, 99 S.Ct. 1158, 1162, 59 L.Ed.2d 383 (1979). "Thus, *Scott* establishes an after-the-fact test that requires a reviewing court to find an uncounselled misdemeanor conviction constitutional when the defendant was not [incarcerated]." *Layton City v. Longcrier,* 943 P.2d 655, 658 (Utah Ct.App.), *cert. denied,* 953 P.2d 449 (Utah 1997), *and cert. denied,* — U.S. —, 118 S. Ct 1811, 140 L.Ed.2d 949 (1998). Given that W.B.J. was not incarcerated, no constitutional right to counsel is implicated in this case.

In Utah, however, our legislature has vested a juvenile with a statutory right to counsel beyond what the Constitution requires. Regardless of whether the juvenile faces confinement,

> [t]he parents, guardian, custodian, and the minor, if competent, shall be informed that they have the right to be represented by counsel at every stage of the proceedings. They have the right to employ counsel of their own choice and if any of them requests an attorney and is found by the court to be indigent, counsel shall be appointed by the court.

Utah Code Ann. § 78–3a–913(1)(a) (Supp. 1998).[2] The statute does not require that the juvenile personally invoke the right to counsel. Rather, it allows parents, guardian, custodian, or the minor, "any of them," to request appointed counsel to represent the interests of an indigent juvenile. *Id.*

To determine whether a juvenile is indigent, the court considers the following factors:

> "employment status and earning capacity; *financial aid from family* or friends; financial assistance from state and federal programs; [the defendant's] necessary living expenses and liabilities; [the defendant's] unencumbered assets, or any disposition thereof, and borrowing capacity; and, the relative amount of court costs to be waived."

*Vincent,* 883 P.2d at 283–84 (quoting *Kelsey v. Hanson,* 818 P.2d 590, 591–92 (Utah Ct. App.1991) (per curiam)) (alteration in original) (footnotes omitted) (emphasis added). The Utah Supreme Court has noted "that if the facts establish that two people are living together as a domestic unit, without regard to whether they are legally married, then both persons' incomes may properly be considered in determining whether either of them is indigent." *Id.* at 283 n. 6. Similarly, an unemancipated juvenile living in the family home is part of a domestic unit.[3] The trial court must therefore consider the resources of the juvenile's parents, as well as any separate resources of the juvenile, before determining an unemancipated juvenile's indigence.

■ An unemancipated juvenile must include the financial resources of his or her parents in any application for appointment of counsel. Similarly, the juvenile's parents

---

2. We note that the statute is found in the "Miscellaneous Provisions" section of the Juvenile Court Act. As such, the statute also applies to abuse, neglect, and dependency proceedings. *See* Utah Code Ann. § 78–3a–306(2)(e) (Supp. 1998). It also applies to termination of parental rights proceedings. *See id.* § 78–3a–406(2) (1996); *L.C. v. State,* 348 Utah Adv. Rep. 26, 27, 963 P.2d 761, 763 (Utah Ct.App.1998). Depending on the type of proceeding, all of the persons specified—"parents, guardian, custodian, and the minor"—have statutory rights to appointed counsel.

3. The dissent challenges our conclusion that W.B.J. is an unemancipated juvenile. However, W.B.J. has never asserted he is emancipated. *See In re R.R. v. C.R.,* 797 P.2d 459, 464 (Utah Ct.App.1990) (stating appellants must "establish[] that their sons were actually emancipated, and that appellants' obligations to support were thereby terminated"). We also note that an unemancipated juvenile's claim to family financial resources is on a strong legal footing. *See* Utah Code Ann. § 78–45–3(1) (1996) ("Every father shall support his child...."); *Id.* § 78–45–4(1) (1996) ("Every woman shall support her child....").

must include the juvenile's personal resources when requesting court-appointed counsel for the juvenile. Thus, the trial court may not focus exclusively on an unemancipated juvenile's separate resources in determining the juvenile's indigence. Given the undisputed fact that W.B.J.'s family could afford an attorney, we conclude that the trial court ruled correctly in not appointing counsel to represent W.B.J.

▮ Even if we were to hold that the court erred in not appointing counsel, the result would be the same. Any error in not appointing counsel could not be a denial of a constitutional right to counsel because W.B.J. was not incarcerated. *See Scott,* 440 U.S. at 373, 99 S.Ct. at 1162; *Gault,* 387 U.S. at 41, 87 S.Ct. at 1451. If W.B.J.'s statutory right to counsel was in any way violated, reversal would likewise not be warranted because counsel on appeal has failed to demonstrate the likelihood of a different result. *See Young,* 853 P.2d at 361 (holding " 'the standard for dealing with non-constitutional error is that [the court] will not reverse a conviction unless the error is substantial and prejudicial in the sense that there is a reasonable likelihood that in its absence there would have been a more favorable result for the defendant' ") (quoting *State v.* Johnson, 771 P.2d 1071, 1073 (Utah 1989)).

The judgment of the juvenile court is affirmed.

ORME, J., concurs.

DAVIS, P.J., (dissenting):

I respectfully dissent from the main opinion. At the outset, the majority mischaracterizes the factual and procedural context of the case by describing W.B.J.'s position as arguing that the court must focus "exclusively" on his separate resources. In this case, the trial court did not consider his separate resources or availability to W.B.J. of collateral resources at all. Indeed, in the Fourth District, the trial court focused "primarily" on his mother's resources. The form completed by W.B.J.'s mother requests employment income information only from his mother, together with her assessment of income from "Spouse/Family/Friends." [1] The majority opinion then denies W.B.J.'s vital and recognized constitutional right to counsel by engaging in a strained interpretation of *In re Gault* and Utah's statutory implementation of the juvenile's constitutional right to counsel. Finally, the majority somehow determines that W.B.J. is an unemancipated minor and, as a result, he and his parents must be considered as one financial package.

The United States Supreme Court in *In re Gault* held that in order to ensure " 'the essentials of due process and fair treatment' " under the Due Process Clause of the Fourteenth Amendment, an indigent juvenile must be appointed counsel if he or she is at risk of being incarcerated.[2] 387 U.S. 1, 30, 41, 87 S.Ct. 1428, 1445, 1451, 18 L.Ed.2d 527 (1967) (citation omitted); *see also, State v. Peterson,* 681 P.2d 1210, 1215 (Utah 1984) (" 'The right to counsel ... [is an] essential aspect[ ] of due process.' " (citation omitted)). Notwithstanding, the majority essentially holds that W.B.J.'s right to counsel depends upon the apparent ability of his parents to provide him with the necessary representation. However, a parent's failure or refusal to provide counsel should not work to deprive a juvenile of his constitutional right to such counsel, even an unemancipated juvenile. *See In re L.G.T.,* 216 So.2d 54, 56 (Fla.Dist. Ct.App.1968); *In re J.B.,* 157 Vt. 668, 603 A.2d 368, 368 (Vt.1991). "A juvenile's right to counsel during every stage of the proceedings against him cannot be made to depend upon the financial status of persons liable for his support ... or their willingness to fulfill that support obligation at the time the court makes the determination of whether to appoint counsel." *Opinion of the Justices,* 121 N.H. 531, 431 A.2d 144, 148 (N.H.1981); *see also In re J.B.,* 603 A.2d at 369 ("The provision of counsel may not be made contingent on the inability to pay attorney's fees of persons other than the juvenile, because

---

1. Here, $174 a month "VA comp/disability" with no further information or identification of the source, duration, or availability for W.B.J.'s defense.

2. It is undisputed that the charges exposed W.B.J. to the risk of incarceration. *See* Utah Code Ann. § 78–3a–118(2)(d) (Supp.1997).

their unwillingness to provide counsel could delay the proceeding while a court sought to enforce a support order, and raise constitutional questions regarding a juvenile's right to fair and timely proceedings."). *But see In re Ricky H.*, 2 Cal.3d 513, 86 Cal.Rptr. 76, 468 P.2d 204, 209 (Cal.1970) (stating that a "minor [does not] have a constitutional right to appointed counsel without reference to the financial status of his parents").

The majority is apparently influenced by language in *Gault* which, at first glance, indirectly supports their position. When addressing the indigent juvenile's right to appointed counsel, *Gault* states "if *they* are unable to afford counsel, ... counsel will be appointed to represent the child." *Gault*, 387 U.S. at 41, 87 S.Ct. at 1451. Read strictly, *Gault* would require the trial court to consider the financial resources of both the juvenile and his or her parents as a whole.[3] However, when read in context of the entire opinion, it becomes clear that the majority's constricted interpretation was not the result intended by *Gault*.

The Supreme Court in *Gault* found the juvenile proceeding at which a child could be "subjected to the loss of his liberty for years ... comparable in seriousness to a felony prosecution." *Id.* at 36, 87 S.Ct. at 1448. Because of the serious nature of a child facing incarceration, the Supreme Court recognized that

> [t]he juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child "requires the guiding hand of counsel at every step in the proceedings against him."

*Id.* at 36, 87 S.Ct. at 1448 (citation omitted).

The Supreme Court's decision in *Gault* was influenced by a recommendation given by the President's Crime Commission, acknowledging that "[t]he Commission's statement of its position is very forceful." *Id.* at 38, 87 S.Ct. at 1449. This Commission "recommended that in order to assure 'procedural justice for the child,' it is necessary that

'[c]ounsel ... be appointed as a matter of course wherever coercive action is a possibility, without requiring any affirmative choice by child or parent.'" *Id.* at 38, 87 S.Ct. at 1449 (quoting Report by the President's Commission on Law Enforcement and Administration of Justice, "The Challenge of Crime in a Free Society," pp. 86–87 (1967) (hereinafter Nat'l Crime Comm'n Report)).

The Commission justified its recommendation as follows:

> "The Commission believes that no single action holds more potential for achieving procedural justice for the child in the juvenile court than provision of counsel. The presence of an independent legal representative of the child, or of his parent, is the keystone of the whole structure of guarantees that a minimum system of procedural justice requires. The rights to confront one's accusers, to cross-examine witnesses, to present evidence and testimony of one's own, to be unaffected by prejudicial and unreliable evidence, to participate meaningfully in the dispositional decision, to take an appeal have substantial meaning for the overwhelming majority of persons brought before the juvenile court only if they are provided with competent lawyers who can invoke those rights effectively. The most informal and well-intentioned of judicial proceedings are technical; few adults without legal training can influence or even understand them; certainly children cannot. Papers are drawn and charges expressed in legal language. Events follow one another in a manner that appears arbitrary and confusing to the uninitiated. Decisions, unexplained, appear too official to challenge. But with lawyers come records of proceedings; records make possible appeals which, even if they do not occur, impart by their possibility a healthy atmosphere of accountability."

*Id.* at 38 n. 65, 87 S.Ct. at 1449–50 n. 65 (quoting Nat'l Crime Comm'n Report, pp. 86–87).

Notwithstanding the clear import of *Gault*, the majority erroneously relies upon both a

---

3.  To the extent those resources are available to

retain counsel, such consideration is appropriate.

United States Supreme Court case and a case from this court in support of its assertion that we may use an "after-the-fact test" in determining whether the juvenile was entitled to court-appointed counsel. In *Scott v. Illinois,* the issue was whether the Constitution required the state to provide counsel whenever "imprisonment [was] an authorized penalty." 440 U.S. 367, 368, 99 S.Ct. 1158, 1159, 59 L.Ed.2d 383 (1978). The Court held "that the Federal Constitution does not require a state trial court to appoint counsel for a criminal defendant [when] imprisonment upon conviction is authorized but not actually imposed upon the defendant." *Id.* at 369, 99 S.Ct. at 1160. However, a vital ancillary proviso to *Scott*'s holding is that "'every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel.'" *Id.* (quoting *Argersinger v. Hamlin,* 407 U.S. 25, 40, 92 S.Ct. 2006, 2014, 32 L.Ed.2d 530 (1972)). Accordingly, the court must make the determination of no imprisonment, and thus right to counsel, *before* trial, not by application of an "after-the-fact test."

*Scott*'s holding builds upon the foundation laid in *Argersinger v. Hamlin.* There, the Supreme Court reviewed a decision of the Florida Supreme Court holding that the federal constitutional right to counsel extends only to trials for nonpetty offenses punishable by more than six months imprisonment. 407 U.S. at 27, 92 S.Ct. at 2007. The Supreme Court rejected the Florida Supreme Court's conclusion, holding instead that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Id.* at 37, 92 S.Ct. at 2012. The Court declined to premise the right to counsel upon the punishment's degree or classification, but noted that a defendant charged with a misdemeanor is recurrently prejudiced because "'[t]he misdemeanor trial is

characterized by insufficient and frequently irresponsible preparation on the part of the defense, the prosecution, and the court.'" *Id.* at 35, 92 S.Ct. at 2011–12 (citation omitted). The Court thus reasoned "that the problems associated with misdemeanor and petty offenses often require the presence of counsel to insure the accused a fair trial." *Id.* at 36–37, 92 S.Ct. at 2012.

This court applied the holding of *Scott* in *Layton City v. Longcrier,* 943 P.2d 655 (Utah Ct.App.), *cert. denied,* 953 P.2d 449 (Utah 1997), *and cert. denied* —— U.S. ——, 118 S.Ct. 1811, 140 L.Ed.2d 949 (1998). There, the trial court denied defendant's request for counsel, and he was found guilty of a misdemeanor after trial. *See id.* at 657. Before sentencing, defendant hired counsel and filed a motion for arrest of judgment or a new trial on the ground that the trial court denied his right to counsel. *See id.* At the hearing on the defendant's motion, the prosecution "recommended defendant receive no jail time, arguing that if defendant were not imprisoned, he would have no constitutional right to counsel. [The prosecution] claimed the question of defendant's knowledge regarding his right to counsel would therefore be moot." *Id.* At sentencing, the defendant was fined and given a suspended jail sentence. *See id.*

On appeal, the defendant again argued that he was denied his constitutional right to counsel. *See id.* This court held that because the defendant was not actually imprisoned, the absence of counsel at trial was constitutional. *See id.* at 658. As pointed out by the majority in the case before us, *Longcrier* purported to apply an "after-the-fact test" to determine whether the denial of counsel was unconstitutional. *Id.* Absent from the *Longcrier* opinion is any statement that the trial court determined, *pretrial,* not to imprison the defendant as punishment for his crime, as required by the holdings of *Scott* and *Argersinger.*[4] As a practical mat-

---

4. In fact, it seems that the decision of *Longcrier* may have been incorrect, given the requirement in both *Scott* and *Argersinger* that the decision not to imprison a defendant as punishment must be made before trial begins. In *Longcrier,* the trial judge actually sentenced the defendant to

jail time. *See Scott,* 440 U.S. at 373–74, 99 S.Ct. at 1162 ("We therefore hold that the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant *be sentenced* to a term of imprisonment *unless* the State has afforded him the right

ter, however, the trial court determined, before sentencing, to accede to the prosecutor's recommendation *because* the determination of no jail time was not previously made.

The majority incorporates the holdings of *Scott* and *Longcrier* and determines that "[g]iven that W.B.J. was not incarcerated, no constitutional right to counsel is implicated in this case." I disagree. The juvenile court judge in this case did not decide before trial to refrain from incarcerating W.B.J., as is clearly required by the Supreme Court cases. *Argersinger, Scott,* and *Longcrier* are also distinguishable simply because those cases did not involve juvenile proceedings. As noted in *Gault,* juvenile cases present different issues. Most importantly, because " '[j]udicial proceedings are technical[,] few adults without legal training can influence or even understand them; certainly children cannot.' " *Gault* at 38 n. 65, 87 S.Ct. at 1449–50 n. 65 (citation omitted). Thus, "[t]he child 'requires the guiding hand of counsel at every step in the proceedings against him.' " *Id.* at 36, 87 S.Ct. at 1448.

Moreover, the explicit language in *Gault* requires appointed counsel if the juvenile is *at risk* of being incarcerated:

> We conclude that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency *which may result in commitment to an institution in which the juvenile's freedom is curtailed,* the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child.

*Id.* at 41, 87 S.Ct. at 1451 (emphasis added). As noted earlier, in a proceeding where a juvenile may be "subjected to the loss of his liberty[,] ... [t]he juvenile needs the assistance of counsel ... to ascertain whether he has a defense and to prepare and submit it."

to assistance of appointed counsel in his defense." (emphasis added)).

5. For example, a conflict may exist between the parents and the juvenile running the gamut from legitimate disciplinary concerns to situations where the parents are the victims of the juvenile's criminal activity.

*Id.* at 36, 87 S.Ct. at 1448. This is so because even " 'the prospect of imprisonment for however short a time will seldom be viewed by the accused as a trivial or "petty" matter and may well result in quite serious repercussions affecting his career and his reputation.' " *Argersinger,* 407 U.S. at 37, 92 S.Ct. at 2012 (quoting *Baldwin v. New York,* 399 U.S. 66, 73, 90 S.Ct. 1886, 1890, 26 L.Ed.2d 437 (1970)).

Clearly *Gault* does not envision an "after-the-fact test" for determining whether appointed counsel was constitutionally required in juvenile proceedings. To the contrary, *Gault* contemplates that any time a juvenile is faced with incarceration, counsel *shall* be appointed if the juvenile is indigent. Accordingly, the juvenile court's denial of court-appointed counsel in this case presents an issue of constitutional magnitude, even though the juvenile was not ultimately imprisoned, and the majority's assertion that " 'actual imprisonment [is] the line defining the constitutional right to appointment of counsel' " is contextually incorrect.

In sum, if the indigent juvenile's constitutional right to court-appointed counsel was premised on the financial status of his or her parents, then the due process right afforded the juvenile by *Gault* would be rendered meaningless in many cases. Even financially sound parents may refuse to hire counsel to represent their offspring for various reasons,[5] effectively depriving the juvenile of his or her right to counsel. This is not the result envisioned by *Gault.* Accordingly, I would hold that if an unemancipated juvenile's parents are unable or refuse to hire counsel to represent their child, even though they have adequate financial means to do so, the juvenile court must examine whether the juvenile has the financial resources, separate and apart from the financial resources of his parents, at his disposal or available to him to employ counsel.[6] If he does not, then the

6. Conversely, an unemancipated juvenile should not be entitled to appointed counsel if he or she has resources independent of his indigent parents.

juvenile court is required to appoint counsel on the juvenile's behalf.[7]

Ironically, this analysis is consistent with Utah's statutory provisions relied upon by the majority in reaching its decision. Section 78–3a–913 of the Utah Code provides, in relevant part:

> (1)(a) The parents ... and the minor, if competent, shall be informed that they have the right to be represented by counsel at every stage of the proceedings. They have the right to employ counsel of their own choice and *if any of them* requests an attorney and *is found by the court to be indigent, counsel shall be appointed by the court* ....

Utah Code Ann. § 78–3a–913(1)(a) (Supp. 1997) (emphasis added).

The Rules of Juvenile Procedure also provide for notice of the right to counsel and notice of the right to appointed counsel if the juvenile is indigent: "A minor who is the subject of a delinquency petition ... shall be advised of the following rights: ... to be represented by counsel at all stages of the proceedings and if indigent, to have appointed counsel." Utah R. Juv. P. 26(a)(6).

Section 78–3a–913(1)(a) and Rule 26(a)(6) both require that the juvenile court consider whether the juvenile is indigent separate and apart from the juvenile's parents. Section 78–3a–913(1)(a) provides that "if *any* of them requests an attorney and is found by the court to be indigent, counsel shall be appointed by the court." Utah Code Ann. § 78–3a–913(1)(a) (Supp.1997) (emphasis added).

Thus, the indigency determination contemplated by section 78–3a–913(1)(a) is not limited to the juvenile's parents, but also includes the juvenile. Under this section, if the juvenile requests counsel and is indigent, the juvenile is entitled to court-appointed counsel. Additionally, Rule 26(a)(6) provides that the juvenile *shall* be entitled to appointed counsel if *he or she* is determined to be indigent, not the juvenile's parents. *See* Utah R. Juv. P. 26(a)(6). Accordingly, it is apparent from both the statutory language in section 78–3a–913(1)(a) and the language in Rule 26(a)(6) that the juvenile's indigency status must be determined independently from that of the juvenile's parents. This is so even if the juvenile is unemancipated. If a parent who can afford counsel withholds financial aid, and the juvenile does not have sufficient financial resources to retain counsel, the juvenile must be considered indigent and is entitled to appointed counsel.

Here, the record discloses that W.B.J. requested court-appointed counsel. Notwithstanding, both the Third District and the Fourth District Juvenile courts considered only whether W.B.J.'s parents were indigent, not W.B.J. While financial support from family and friends is a factor when deciding whether a person is indigent, *see Kelsey v. Hanson,* 818 P.2d 590, 591 (Utah Ct.App. 1991), the court may not rely solely on the financial resources of W.B.J.'s parents in determining whether W.B.J. was indigent. The court must evaluate both the independent resources of the juvenile together with collateral resources (including parents) *available*

---

**7.** My analysis does not suggest that there is no recourse against the juvenile's parents. It is conceivable that the juvenile's parents may be held liable for the funds expended by the state to appoint counsel. *See* Utah Code Ann. § 78–3a–513(6) (1996) ("The court may order ... the parents ... of any minor for whom counsel is appointed to reimburse the county for the cost of appointed counsel."); Utah R. Juv. P. 26(c) ("[T]he court may order ... that the parent ... reimburse the county for the cost of appointed counsel, in whole or in part, depending on ability to pay."); *see also* Utah Code Ann. § 78–45–3 (1996) (defining father's duty to provide necessities for child); Utah Code Ann. § 78–45–4 (1996) (defining mother's duty to provide necessities for child); *In re Ricky H.,* 2 Cal.3d 513, 86 Cal.Rptr. 76, 468 P.2d 204, 207–08 (Cal.1970) ("[I]t would be anomalous to suggest that the parental support obligation extends to furnishing food, clothing, shelter and medical care, but not legal assistance essential to protect and preserve the minor's constitutional rights."); *In re J.B.,* 157 Vt. 668, 603 A.2d 368, 369 (Vt.1991) ("[T]here is ample authority from other jurisdictions for the proposition that legal fees expended to protect the interests of minor children are among the necessities for which parents may be liable."). *But see In re L.G.T.,* 216 So.2d 54, 56 (Fla.Dist.Ct.App.1968) ("[T]he parents' common law duty to furnish necessities to their minor children does not extend to the furnishing of legal services and costs....").

Recourse to the parents, however, should not affect the juvenile's entitlement to be represented or delay the proceeding, but should occur after the fact, as appropriate.

to the juvenile to properly determine indigency for the purposes of entitlement to appointed counsel. I would therefore hold that the juvenile court erred by failing to consider whether W.B.J. was indigent and therefore entitled to court-appointed counsel.[8]

I also disagree with the majority opinion insofar as it concludes that W.B.J. is unemancipated. Although emancipation may or may not be determinative depending on the circumstances, nothing in the record supports this factual leap. The only "evidence" in the record that W.B.J. is unemancipated is the fact that the address listed for W.B.J. is the same as that listed for his parents. The financial affidavits completed by W.B.J.'s parents state that there is one child under the age of eighteen living in their household, but they do not list W.B.J. as that person. Thus, to the extent the majority analysis depends upon W.B.J. being unemancipated, it does not find adequate support in the record.[9] Apparently recognizing the absence of record support for emancipation, the majority suggests W.B.J. is unemancipated because he "has never asserted he is emancipated." I am unaware of authority for the proposition that failure to assert emancipation amounts to unemancipation.

The majority also premises its decision on the conclusion that "an unemancipated juvenile living in the family home is part of a domestic unit," and thus the income of everyone in the domestic unit must be considered in determining whether the juvenile is indigent. In so holding, the main opinion relies on dicta in *State v. Vincent,* 883 P.2d 278 (Utah 1994). There, the Utah Supreme Court agreed

> that *if the facts establish* that two people are living together as a domestic unit, without regard to whether they are legally married, then both persons' incomes may properly be considered in determining whether either of them is indigent. *Such a situation would arise when the two people function as a single economic unit.*

*Id.* at 283 n. 6 (emphasis added). *Vincent* clearly requires a factual determination that a "domestic unit" exists and that it "functions as a single economic unit." *Id.* Here, noticeably absent in the record is any evidence supporting the majority's conclusion that W.B.J. and his parents both constitute and function as a single economic unit, let alone the availability of resources from that economic unit to retain counsel.[10]

Lastly, the majority erroneously places the burden of demonstrating the likelihood of a different result upon W.B.J., i.e., whether the error was harmless. This is so because the

---

8. The juvenile court's error is not harmless. *See Sullivan v. Louisiana,* 508 U.S. 275, 278, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993) (stating that a court's error regarding the constitutional right to counsel "will always invalidate the conviction" and the harmless error doctrine will not attach).

9. The majority argues that its emancipation determination is on solid ground because "W.B.J. has never asserted he is emancipated." While this much may be true, W.B.J. was never put on notice that this was required of him in order to secure his constitutionally protected right. W.B.J. was entitled to notice that if *he* was indigent by way of emancipation, then the court was under a duty to appoint counsel on his behalf. *See Gault,* 387 U.S. at 41, 87 S.Ct. at 1451 (holding due process requires that minor be notified of right to court-appointed counsel if indigent); *see also Nelson v. Jacobsen,* 669 P.2d 1207, 1211 (Utah 1983) (stating notice is " '[a]n elementary and fundamental requirement of due process' " (citation omitted)); *In re L.G.W.,* 641 P.2d 127, 129 (Utah 1982) ("It is well settled that juvenile court procedures must conform to the

fundamental requirements of due process and fair treatment."), *superseded on other grounds by statute as stated in In re R.L.I.,* 771 P.2d 1068 (Utah 1989); *cf.* Utah Code Ann. § 78–3a–913(1)(a) (Supp.1997) ("The parents . . . and the minor . . . shall be informed that they have the right to be represented by counsel at every stage of the proceedings."); Utah R. Juv. P. 26(a)(6) (providing minor "shall be advised of" right to have appointed counsel if indigent). The record before us discloses no such notice; in fact, it suggests the opposite. Neither preprinted form distributed in the Third District or the Fourth District put W.B.J. on notice that his ability to pay for legal counsel could be considered separately from the ability of his parents or that the fact of emancipation may be important to the court's indigency determination. Moreover, in the Fourth District, only W.B.J.'s mother was asked to fill out a financial affidavit, not W.B.J. Accordingly, because of his lack of notice, W.B.J. could not have met his burden.

10. Since W.B.J. was tried without counsel, there is at least an inference of the unavailability of resources.

majority again incorrectly characterizes the juvenile court's error in failing to conduct a proper indigency determination as statutory, rather than constitutional.[11] However, because I would hold that the error before us is of constitutional significance, as discussed in note 6, any error regarding this guarded constitutional right is not harmless because an erroneous decision regarding the right to counsel "will always invalidate the conviction." *Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).[12]

I would hold that W.B.J. is entitled to have the court determine whether he is indigent independently of the indigency status of his parents. In making that determination, it is appropriate for the court to consider any and all relevant factors including, but not limited

to, the availability to the juvenile of collateral sources of funding. Thus, I would remand to the Fourth District Juvenile Court for a hearing on the narrow issue of determining whether W.B.J. was indigent at the time of his trial and thus entitled to court-appointed counsel. If the court determines that W.B.J. was indigent and therefore entitled to appointed counsel, his conviction must be set aside and a new trial conducted. If he was not, the conviction should be affirmed.

**11.** Utah has implemented a juvenile's constitutional right to counsel by both statute and rule. *See* Utah Code Ann. § 78–3a–913 (Supp.1997); Utah R. Juv. P. 26(a)(6). The fact that the legislature and the Utah Supreme Court have acted responsibly and effectively in this area does not change a constitutional right into a statutory right.

**12.** The very error which the majority claims passes constitutional muster is compounded by

giving the defendant notice for the first time on appeal that the burden is on him to show the error is reversible because the error was "only" a statutory violation, and that counsel on appeal must demonstrate the likelihood of a different result. Thus, a pro se juvenile defendant must try his case in a manner that will enable him to meet his burden of showing on appeal that failure to appoint counsel where required by statute and rule is not harmless error.