1999 UT App 350

**OREM CITY, Plaintiff and Appellee,**

v.

**Travis L. BERGSTROM, Defendant and Appellant.**

**No. 981690–CA.**

Court of Appeals of Utah.

Dec. 2, 1999.

---

Brett J. Delporto, Ballard, Spahr, Andrews & Ingersoll, and Gregory G. Skordas, Gustin, Christian, Skordas & Caston, Salt Lake City, for Appellant.

Robert J. Church, Orem, for Appellee

Before Judges BILLINGS, DAVIS, and JACKSON.

## OPINION

JACKSON, Judge:

¶ 1 Travis L. Bergstrom appeals the trial court's denial of his Motion for a New Trial and Motion for Arrest of Judgment. We reverse and remand for a new trial.

## BACKGROUND

¶ 2 Bergstrom was charged with stalking, a class B misdemeanor in violation of Utah Code Ann. § 76–5–106.5 (1999). At his arraignment, Bergstrom asked the trial court what he must do to secure a public defender. After asking about Bergstrom's age and employment, the trial court denied Bergstrom's request for court-appointed counsel.[1]

1. The actual exchange was as follows:
BERGSTROM: How do I go about receiving [a] public defender? I can't afford an attorney.
THE COURT: How old are you, Mr. Bergstrom?
BERGSTROM: 30 years old, sir.
THE COURT: Okay. And do you have a job?
BERGSTROM: Yes, I do.
THE COURT: And I'm going to deny your request for appointment of counsel. You're an adult male. You're 30 years old. You're old enough to make a living for yourself, and I assume you're old enough to retain an attor-

¶ 3 Bergstrom then proceeded to prepare for trial pro se. He made a timely discovery request to Orem City (the City), dated April 24, 1998. However, the City did not respond to Bergstrom's discovery request until after the trial, which was held on June 8, 1998. Bergstrom represented himself at the bench trial, and presented two witnesses. He was convicted of stalking and sentenced to six months in jail, with all but fourteen days suspended.

¶ 4 Shortly after the trial, Bergstrom hired an attorney and moved for a new trial or for an arrest of the judgment. The trial court denied those motions, and Bergstrom now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 "A district court has broad discretion in deciding whether to grant or deny a motion for a new trial." *Child v. Gonda*, 972 P.2d 425, 428 (Utah 1998). Bergstrom contends the trial court erred by determining that he was not indigent and denying him court-appointed counsel, and that this error warrants a new trial. "[T]he underlying empirical facts regarding [a] claim of indigency are reviewable for clear error; the conclusion as to whether those facts qualify the defendant as indigent is reviewable for correctness." *State v. Vincent*, 883 P.2d 278, 281 (Utah 1994). Because our resolution of this issue is dispositive of Bergstrom's appeal, we need not address his remaining arguments.

## ANALYSIS

¶ 6 Bergstrom argues that the trial court failed to comply with the statutorily mandated procedure for determining whether a defendant is indigent, and this error requires reversal. The City counters that Bergstrom had the burden of proving his indigence, and that he failed to carry that burden.

ney. So if you will see the clerk, she'll give you a copy of that order.

2. The Sixth Amendment provides,
   In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascer-

¶ 7 A criminal defendant's right to counsel is guaranteed by the Sixth Amendment to the United States Constitution.[2] *See State v. Bakalov*, 979 P.2d 799, 808 (Utah 1999). "If an accused is indigent, he is entitled to court-appointed counsel." *State v. Heaton*, 958 P.2d 911, 917 (Utah 1998). "The right to have the assistance of counsel in a criminal trial is a fundamental constitutional right which must be jealously protected by the trial court." *Id.; accord Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963) (stating "in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him"). The Sixth Amendment

embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and necessary to the lawyer—to the untrained layman—may appear intricate, complex and mysterious.

*Johnson v. Zerbst*, 304 U.S. 458, 462–63, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938).

¶ 8 "However, the right to appointed counsel is not absolute.... When a defendant is charged with a misdemeanor crime, counsel is not necessarily guaranteed." *Layton City v. Longcrier*, 943 P.2d 655, 658 (Utah Ct.App.1997) (citation omitted), *cert. denied*, 953 P.2d 449 (Utah 1997), *and cert. denied*, 523 U.S. 1125, 118 S.Ct. 1811, 140 L.Ed.2d 949 (1998). Rather, the right to counsel for a defendant charged with a misdemeanor attaches only if the court determines, pretrial, to impose jail time. *See Scott v. Illinois*, 440 U.S. 367, 369, 99 S.Ct. 1158, 1160, 59 L.Ed.2d 383 (1979); *Arger-*

tained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of counsel for his defence.

U.S. Const. amend. VI.

*Singer v. Hamlin,* 407 U.S. 25, 40, 92 S.Ct. 2006, 2014, 32 L.Ed.2d 530 (1972). In this case, Bergstrom was sentenced to serve fourteen days of a six-month sentence. Thus, his Sixth Amendment right to counsel was implicated.[3] "The denial of the constitutional right to counsel requires reversal." *In re W.B.J.,* 966 P.2d 295, 296 (Utah Ct.App. 1998). Accordingly, we must determine whether the trial court properly denied Bergstrom's request for appointed counsel. If not, we must reverse.

■ ¶ 9 The record shows that the court considered only two facts pertinent to Bergstrom's claim of indigence: his age and his employment status. This inquiry does not begin to meet the degree of scrutiny necessary to protect the fundamental right to the assistance of counsel. "Determining whether a defendant [is indigent] is a fact-intensive inquiry," requiring a consideration of the defendant's entire financial situation. *State v. Vincent,* 883 P.2d 278, 283 (Utah 1994). Our supreme court has stated that courts making an indigency determination should consider the defendant's " 'employment status and earning capacity; financial aid from family or friends; financial assistance from state and federal programs; [the defendant's] necessary living expenses and liabilities; [the defendant's] unencumbered assets, or any disposition thereof, and borrowing capacity.' " *Id.* at 283–84 (citation & footnotes omitted) (alterations in original).

¶ 10 After *Vincent* was decided, our legislature enacted the Indigent Defense Act, Utah Code Ann. §§ 77–32–101 to –704 (1999) (the Act). The Act codifies and implements the procedural protections afforded by the Sixth Amendment. *See* Utah Code Ann. § 77–32–301(1) (1999) (requiring "counsel for each indigent who faces the substantial probability of the deprivation of the indigent's liberty").

¶ 11 The Act further details the necessary inquiry into a criminal defendant's claim of indigence. When a defendant has asked for court-appointed counsel,

the [trial] court *shall* consider:

(i) the probable expense and burden of defending the case;

(ii) the ownership of, or any interest in, any tangible or intangible personal property or real property, or reasonable expectancy of any such interest;

(iii) the amounts of debts owned by the defendant or that might reasonably be incurred by the defendant because of illness or other needs within the defendant's family;

(iv) number, ages, and relationships of any dependents; and

(v) other relevant factors.

Utah Code Ann. § 77–32–202(3)(b) (1999) (emphasis added). Section 77–32–202 "squarely places on trial courts the burden of ensuring that constitutional and [statutory] requirements are complied with." *State v. Gibbons,* 740 P.2d 1309, 1312 (Utah 1987) (guilty plea context).

¶ 12 In this case, the trial court considered none of the factors articulated in *Vincent* or in Section 77–32–202 of the Act. We therefore hold that the trial court's inquiry into Bergstrom's claim of indigence was deficient as a matter of law and violated his Sixth Amendment right to the assistance of counsel. Accordingly, we reverse and remand for a new trial.

■ ¶ 13 Because this issue has not appeared before our courts, but is likely to in the future, "a statement of the law concerning [indigency determinations under section 77–32–202] in all trial courts in this state is appropriate." *Gibbons,* 740 P.2d at 1312 (providing similar guidance regarding guilty pleas). When a criminal defendant who faces the threat of actual incarceration asks for court-appointed counsel, it is the court's duty to advise the defendant of the financial information it needs to properly evaluate the claim of indigence.

■ ¶ 14 Providing a defendant with a written form would ensure that the defendant clearly understands what information the court needs to evaluate a claim of indi-

---

**3.** It makes no difference in our analysis that a municipality—rather than the state or federal government—is the prosecuting entity. *See City*
*of St. George v. Smith,* 828 P.2d 504, 506 (Utah Ct.App.1992).

gence. The affidavits of indigence currently in use, *see, e.g.,* Utah Code Ann. § 77–32–202(2)(a) (1999) (requiring defendants charged with class A misdemeanor or felony to file affidavit "contain[ing] the factual information required in this section and by the court"), or some similar financial statement form would serve this purpose well.[4] Once the defendant has been advised what information he or she must provide, the burden then shifts to the defendant to supply this information. *See Vincent,* 883 P.2d at 283.

¶ 15 "This procedure may take additional time, but constitutional rights may not be sacrificed in the name of judicial economy. The procedure outlined is designed to assist trial judges in making the constitutionally required determination" whether a defendant is truly indigent and deserving of court-appointed counsel. *Gibbons,* 740 P.2d at 1314. The fundamental right to counsel deserves all practical safeguards to protect it, and we feel it prudent to err on the side of caution.

### Other Issues Raised on Appeal

¶ 16 Because we hold that the trial court's error was harmful as a matter of law and warrants reversal, we need not determine whether the other claimed errors were harmful, or whether we should invoke the doctrine of cumulative error. *See State v. Heaton,* 958 P.2d 911, 919 (Utah 1998) (declining to address other arguments raised on appeal because improper waiver of right to counsel "is dispositive").

### CONCLUSION

¶ 17 The trial court erred as a matter of law when it determined that Bergstrom was not indigent based solely on his age and employment status. This error affected Bergstrom's Sixth Amendment right to assistance of counsel. Accordingly, we reverse and remand for a new trial.

4. We note that a defendant such as Bergstrom, who was charged with a class B misdemeanor, need not actually file the affidavit with the court. *See* Utah Code Ann. § 77–32–202(2)(b) (1999). Nonetheless, establishing a uniform procedure that does not differentiate among defendants will

¶ 18 WE CONCUR: JUDITH M. BILLINGS, Judge, and JAMES Z. DAVIS, Judge.

make the trial court's job in this respect easier. Whether the defendant is required to formally file the affidavit or not, providing the affidavit or some similar form is a simple way for the court to gather the information required by our case law and statutes.